THE STATE OF MISSOURI ex rel. QUINCY, OMAHA
& KANSAS CITY RAILROAD COMPANY, Re-
spondent, v. WILLIAM C. MYERS, Appellant.

**Kansas City Court of Appeals, October 7, 1907.**

1. **RAILROADS: Service of Process: Statute.** The only way a
defendant corporation can be brought into court is by notice
served in the form and manner provided by the statute; and
the Legislature has the power to prescribe the method of such
service subject only to the rule that the method be one that
with reasonable certainty will result in actual receipt by the
corporation of the notice served.

2. ——: ——: ——: **Business Office.** An office some dis-
tance from the main business office at a county town where
an operator alone stays at night to receive and transmit
train orders, is a business office within the meaning of sec-
tion 995, Revised Statutes 1899, and service on such operator
is valid.

Appeal from Grundy Circuit Court.—*Hon. George W.
Wannemaker,* Judge.

REVERSED.

*E. M. Harber* and *A. G. Knight* for appellant.

(1)   If tested by definitions and the construction
of the language employed by the statute then the term
"any business office of the company" is fully met by the
facts of this case.   1 Words & Phrases, 915; 5 Am.
and Eng. Ency. of Law (2 Ed.), 71, 72, 76; 1 Am. and
Eng. Ency. of Law (2 Ed.), 908; Trustees of Columbia
College (N. Y.), 47 How. Prac. 275; Martin v. State, 59
Ala. 36; Goddard v. Chaffee, 2 Allen (Mass.) —; 22 Am.
and Eng. Ency. of Law (2 Ed.), 831; Stephenson v.
Primrose, 33 Am. Dec. 281; Rhodes v. Turnpike Co., 98
Mass. 95; Palmer v. Kelleher, 111 Mass. 320; Bolinger
v. Manning, 79 Cal. 7; Rodden v. Doane, 92 Cal. 557.
(2)   If we apply the test of looking to the object, spirit

and meaning of section 995 supra, the service in this case must likewise be upheld. 19 Am. and Eng. Ency. Plead. & Prac., 664, 666, 677; Davis v. Railroad, 126 Mo. 76; Heltzel v. Railroad, 77 Mo. 483; Heltzell v. Railroad, 77 Mo. 315; Hill v. Steel Co., 90 Mo. 103; Hoen v. Railroad, 64 Mo. 561; Young v. Insurance Co., 180 Mo. 153; Palmer v. Railroad, 35 Hun (N. Y.) 369; Barrett v. Telegraph Co., 56 Hun (N. Y.) 430; 18 Civ. Pro., 138 N. Y. 491; Insurance Co. v. Reid, 19 Ind. App. 203; Eisenhofer v. N. Y. Zietung Pub. & Print. Co., 91 App. Div. (N. Y.) 94; Lungchung v. Railroad, 16 Am. and Eng. R. R. Cases, 551; Copeland v. Wireless Telegraph Co., 136 N. C. 11; 48 S. E. 501; Railroad v. Kelley (Tex.), 83 S. W. 855; 2 Cur. Law 1262; Cloud v. Inhabitants Pierce City, 86 Mo. 357. (3) There is an abundance of authority construing managing agent, agents of foreign corporations doing business in this State, but they throw no light upon the statute under review, and we cite the following as samples of that line of decisions. Doe v. Mfg. Co. (U. S.), 104 Fed. 684, 687, 44 C. C. A. 128; Mulhearn v. Press Pub. Co., 20 Atl. 760, 53 N. J. Law (24 Vroom) 150; Mikolas v. Walker & Sons, 76 N. W. 36, 73 Minn. 305; Gottschalk Co. v. Distilling & Cattle Feeding Co. (U. S.), 50 Fed. 681; Wall v. Railroad (U. S.), 95 Fed. 398-400; 37 C. C. A. 129; Denver & R. G. R. Co. v. Roller (U. S.), 100 Fed. 738, 41 C. C. A. 22, 49 L. R. A. 77; Foster v. Lumber Co., 23 L. R. A. 490 and note to 503; Pinney v. Loan & Invest. Co., 50 L. R. A. 577 and note to 599; Federal Betterment Co. v. Reeves, 4 L. R. A. (N. S.) 460 and note; Tuchband v. Railroad, 40 Am. and Eng. R. R. Cases, 612 and note to 624; Land Co. v. Land & Cattle Co., 187 Mo. 420; Williams v. Dietenhoefer, 188 Mo. 145; Meyer v. Mining Co., 192 Mo. 163, l. c. 183; Nevitt v. School, 79 Mo. App. 203; Taussig v.

Railroad, 186 Mo. 269; Youree v. Ins. Co., 180 Mo. 153; Trust Co. v. Railroad, 195 Mo. 689; Bente v. Typewriter Co., 116 Mo. App. 80; Brassfield v. Railroad, 109 Mo. App. 710; Holtscheider v. Railroad, 107 Mo. App. 381; Vickery v. O. K. C. & E., 93 Mo. App. 4; Horn v. Railroad, 88 Mo. App. 469, 477.

*J. G. Trimble* and *Hall & Hall* for respondent.

(1) It was the duty of appellant to serve and make a true return of the summons issued and delivered to him as sheriff to serve in the case of Brassfield v. The Relator Company, and he is liable to relator in damages for making a false return. R. S. 1899, secs. 995, 996, 10046; 25 Am. and Eng. Ency. of Law (2 Ed.), p. 680; Astor v. Kesler, 61 N. J. L. 75, 38 Atl. 819; Hunter v. Robeson, 95 Tenn. 124, 31 S. W. 1010; Martin v. Barney, 20 Ala. 369; Duncan v. Webb, 7 Ga. 187; Commonwealth v. Brooker, 36 Ky. 441; Whittaker v. Summers, 26 Mass. —; 9 Pick. 308; State ex rel. v. Finn, 13 Mo. App. 285; State ex rel. v. Harrington, 28 Mo. App. 287; State ex rel. v. Case, 77 Mo. 252; State ex rel. v. Finn, 87 Mo. 314; Palmer v. Crone, 8 Mo. 619, 9 Mo. 269. (2) The switch house was not the business office of the relator. There was no service of summons upon relator, and the leaving of the copy of the petition and summons with Moss, the operator at the switch house, was no service upon the relator and did not bring it into court. 22 Am. and Eng. Ency. of Law (2 Ed.), 831; 19 Am. and Eng. Ency. of Pl. & Pr., 567; Palmer v. Kelleher, 111 Mass. 320; Bank v. Lawrence, 1 Peters (U. S.) 578. (4) The fact that the copy of the petition and summons was afterwards sent to and received by the relator's general attorney did not bind the relator, or relieve the appellant of his liability for a false return. Harness v. Cravens, 126 Mo. 251; Winningham v. Trueblood, 149 Mo. 586. (5) The only way the court could acquire jurisdiction over relator was to serve it with process in the manner

prescribed by the statutes. Cloud v. Inhabitants of Pierce City, 86 Mo. 366; Winningham v. Trueblood, 149 Mo. 586.

JOHNSON, J.—The relator, a railroad company, brought this suit against the sheriff of Grundy county to recover damages alleged to have been sustained in consequence of a false return of a summons issued in an action brought by F. M. Brassfield against relator. No appearance was made by relator in that case in the circuit court and default was taken by plaintiff and judgment afterwards was entered in his favor in the sum of $2,000. Relator then sued out a writ of error from this court and attacked the sufficiency of the summons to confer jurisdiction over its person on grounds which now do not concern us. We held them to be insufficient and affirmed the judgment. [Brassfield v. Railroad, 109 Mo. App. 710.] Relator then paid the judgment and br. ught this action alleging that the recital in the return made by defendant of the summons that service thereof was made on Harry Moss "the agent and in charge of the business office of the Quincy, Omaha & Kansas City Railroad Company . . . in the city of Trenton in the county of Grundy and State of Missouri" was false in this: that the said Moss was not the agent of relator nor was the place where he was served a business office within the meaning of the statute. A jury was waived, evidence was heard and judgment rendered in favor of relator from which this appeal is prosecuted by defendant.

Relator is a domestic corporation and, at the time of the institution of the Brassfield action, was operating a railroad through Grundy and other counties of the State. Its main line passed through the north side of the city of Trenton but its station where it transacted all of its business with the public was situated in the central part of the city and was connected with the main line

by a spur track half a mile or more in length. All of the passenger and local freight trains were run to that station, but many through and extra freight trains passed through the city over the main track without being switched on to the spur track. All night trains were required to stop at the junction where relator maintained a night operator whose duty it was to receive and transmit telegraphic orders to trainmen for their guidance in the operation of trains. A small building called by the witnesses a "dog house" was situated at this point. It contained telegraph instruments for the use of the operator in receiving and sending messages and a few necessary articles of furniture for his use. No tickets were sold at this place nor was any business transacted there with patrons of the road. On a number of occasions, persons living in the neighborhood who desired to become passengers, knowing that trains were compelled to stop at the junction for orders, boarded them there, but no accommodations were provided for the use of passengers nor was there anything present indicative of an implied invitation to the public to use the place as a passenger station. Indeed, the building was not accessible from any public highway.

Defendant received the papers in the Brassfield suit late in the day, and at about eight o'clock in the evening, went to the city station for the purpose of serving them on the person in charge of that office. Finding it closed, he proceeded to the junction where he found the night operator, Harry Moss, in charge. He served Moss in the office with a copy of the petition and summons and made the return which is the subject of present controversy. Moss delivered the papers the next day to the agent of relator at the city station who, in turn, forwarded them to the legal department. There is evidence tending to show that Moss, though employed only as night operator at the junction office, divided his time between that office and the city station, pursuant to some

arrangement made between him and the night operator at the latter station. When on duty at the city station, he sold tickets, checked baggage, received and forwarded express matter and, in fact, attended to all of the duties of station agent. But in our solution of the question of whether the service was properly made, we will ignore this private arrangement, since it does not clearly appear to have been sanctioned by relator, and will determine the character of the relation existing between Moss and his employer from the duties he was required to perform as night operator in charge of the junction office.

The service is to be approved or disapproved according to the construction which should be placed on section 995, Revised Statutes 1899, which in part, is as follows: "When any such summons shall be issued against any incorporated company, service on the president or other chief officer of such company, or in his absence, by leaving a copy thereof at any business office of said company with the person having charge thereof shall be deemed a sufficient service," etc.

It is immaterial that copies of the summons and petition were expedited into the hands of the proper officer of relator. The only way a defendant can be brought into court to answer a cause of action asserted against him is by notice served in the form and manner provided by statute. If the president or other chief officer had been in the county, service made on any other officer or employee actually in charge of a business office of the defendant in the county would have been insufficient, though the papers had been transmitted at once to such chief officer. It is conceded that the recital in the return that the "president or chief officer of said railroad company cannot be found in my said county" was true and, therefore, the determinative question is, what is the meaning of the terms "any business office" and "person having charge thereof" as used in the stat-

ute. Counsel for relator say that *any business office* necessarily means an office where business is transacted with the public and that "the person having charge thereof" refers to the agent of the corporation whose duties require him to deal personally with the public on behalf of his employer. As well, they argue, might it be said that a switchman's "shanty" is a business office and a switchman an agent on whom legal service may be made as to say that a telegraph office maintained for no other purpose than to facilitate the operation of trains is a business office and the operator in charge thereof such agent. Counsel for defendant answer this argument with one equally plausible. They contend that the operation of trains is just as essentially and distinctively a part of the business of a railroad company as is the selling of tickets or the receipt and delivery of freight and that it would be just as reasonable to say that service of summons could not be made legally at the office of the chief train dispatcher where no business with the public is transacted as it would be to hold that the office through which trainmen receive their orders is not a business office.

The object of all service of process for the commencement of suit is to give notice to the party proceeded against and any statutory service which reasonably accomplishes that end answers the requirements of natural justice. Unquestionably the legislative branch of government has the power to prescribe the method of giving such notice to corporations doing business in the state, subject only to the rule that the method provided must be one that, with reasonable certainty will result in the actual reception by the corporation of the notice served. Otherwise, a defendant, in many instances, would be deprived of property without due process of law. A statute cannot be said to be unreasonable or to deprive a corporation of any of its fundamental rights which provides for bringing the corporation into court

by the service of summons on an officer, agent, or employee whose duties are such that any ordinarily careful person in his position would be reasonably certain to apprise the corporation of the service. An agent in charge of an important station where all of the business of a railroad with a populous community is transacted would certainly attend to the transmission of all papers served on him to the proper officer, while a section hand, if served, could not be expected to know what to do, nor to care whether or not the company knew of the service. Consequently, a statute providing for the service of process on an agent of the character described would be reasonable, while one which authorized service to be made on a mere laborer would be unreasonable.

Turning to the provisions of section 995, it is quite clear the legislature intended, within the limits we have defined, to afford the public every reasonable facility for the prosecution in court of claims against corporations. When the president or other chief officer is absent from the county, service may be made at any business office maintained by the corporation in that county. This does not mean the office where the greatest volume of business is transacted, nor one where the business is of a particular character, but any office where any business affairs of the corporation are conducted is a place where service may be made, when the person in charge thereof may be presumed to be reasonably certain to forward the papers to his superior officer. In the present case, it is conceded that business of the relator was transacted at the office where the papers were served and, in our opinion, it was business of a very important character. The safety of persons and property depended on the fidelity and accuracy of the person in charge of that office in the performance of his duties. His relation to his employer was such that no other inference can be entertained than that any reasonably prudent person in his position would have done just what he did—immediately

placed the papers in the proper channel. It is immaterial that no business was transacted with the public. The statute does not say that business of that particular class must be carried on at the place where service is made in order that it may be valid. "Any business office" refers not to the room or building but to the nature of the activity conducted in it and a fixed place where any of the affairs of the corporation is made a subject of regular attention is a business office. A place established for the transmission of train orders, whether it is that occupied by the chief dispatcher or by one of his subordinates is a business office and to say that service made at such place on the person in charge thereof is not good service would be reading into the statute a meaning not authorized by the language employed and one beyond the scope of the expressed legislative intent.

In answer to the example which counsel for relator employ to illustrate their argument, we would say that service made on a switchman at his "shanty" would not be good. A switchman is not a person whose duties justify the inference that he would be reasonably certain to transmit the papers and, further, there is no business of any kind conducted in his "shanty." It is a mere shelter and not a place where any part of his duties is performed.

The authorities cited by defendant in his brief will be found to support the rules we have adopted in the views expressed. We have not disturbed the findings of fact made by the learned trial judge but have disapproved of his conclusions of law, and as we have sufficiently disposed of the case, other questions raised by defendant need not be considered.

The judgment is reversed. All concur.