# THE STATE v. LOUIS EATON, Appellant.

**Division Two, November 21, 1905.**

1. **APPELLATE JURISDICTION: Correcting Circuit Court's Record: Nunc Pro Tunc.** Notwithstanding an appeal from a judgment of the circuit court is pending in the Supreme Court, the lower court still retains full power and jurisdiction over its own records, and may, by proper entries *nunc pro tunc*, cause the same to speak the truth where by inadvertence or misprision of its clerk it has not done so; but the appellate court cannot cause the record of the circuit court to be corrected by an entry *nunc pro tunc*. And, hence, a motion to have this court correct the record of the circuit court so as to show that an order extending the time for the filing of the bill of exceptions was made before a previous extension had expired, will be denied.

2. **BILL OF EXCEPTIONS: Filing: Expiration of Time.** When the time for filing a bill of exceptions has expired, neither the court nor the judge nor the parties can make any further extension.

3. **COURTS: Jurisdiction: Presumption: Powers in Vacation.** While presumptions are often indulged in favor of the jurisdiction of courts of record, as such, yet the powers executed by a judge in vacation are exceptional, and must find express statutory authority, or be such as have from time immemorial been recognized as inherent in the office of judge.

4. **BILL OF EXCEPTIONS: Extending Time for Filing: Presumption.** On the 17th of May the court granted to defendant until the 17th of August to file his bill of exceptions. The record of the circuit court recites: "And now on this 17th day of August, in vacation, comes the defendant by his attorneys and files in the office of the clerk of the circuit court" an order by the judge of said court, in vacation, extending the time for filing the bill of exceptions to November 1st. The order itself bore no date, and contained no recital of the time when it was made. *Held*, that the appellate court cannot presume that the order extending the time was made before the original leave to file expired, but the burden was on the defendant to see to it that the extension was filed before the time expired, or that the order of the judge was dated or recited a time before the original time expired.

5. **CONTINUANCE: Refusal Waived.** The refusal of the court to grant a continuance is waived by not assigning it as a ground for a new trial.

State v. Eaton.

6. **INSTRUCTIONS: No Exceptions.** The appellate court can not consider alleged errors in the giving of instructions, when no exceptions are saved at the time to the action of the court in giving them.

7. **BILL OF EXCEPTIONS: Correcting.** When a bill of exceptions is signed by the judge and filed by the clerk, it is a finality, and errors therein cannot then be corrected.

8. **MURDER: First Degree: Sufficiency of Evidence.** The evidence in this case is held sufficient to justify a verdict finding defendant guilty of murder in the first degree.

Appeal from Dunklin Circuit Court.—*Hon. J. L. Fort,* Judge.

AFFIRMED.

*J. L. Downing* and *W. R. Satterfield* for appellant.

The testimony of defendant clearly makes out a case of manslaughter in the fourth degree, and this testimony is amply corroborated by the circumstances and the testimony of the others; it was therefore error when the court failed and refused to instruct the jury on this point. Secs. 1833, 1834, R. S. 1899; State v. Ellis, 74 Mo. 207; State v. McAnally, 87 Mo. 644; State v. Henson, 106 Mo. 66.

*Herbert S. Hadley,* Attorney-General, and *N. T. Gentry,* Assistant Attorney-General, for the State.

(1) There is nothing before this court, except the record proper, as the bill of exceptions was not filed in time. State v. Thompson, 149 Mo. 439; State v. Britt, 117 Mo. 584; Graham v. Degime, 154 Mo. 88. (2) As no objections were made and no exceptions saved to the giving of the State's instructions, appellant can not now complain of them. State v. Reed, 89 Mo. 171; State v. Elvins, 101 Mo. 243; State v. Gregory, 158 Mo. 147. (3) The evidence abundantly sustained the verdict for murder in the first degree.

GANTT, J.—At the November term, 1903, and on the 22nd day of December, 1903, of the circuit court of Dunklin county, Missouri, the grand jury of said county preferred a charge of murder in the first degree against the defendant for the killing of one Frank Huff, on the 5th day of December, 1903.

The defendant was duly arraigned, placed on his trial on the 5th day of May, 1904, and the trial resulted in a verdict of guilty of murder in the first degree. From the record proper, it appears that within four days he filed his motion for new trial and in arrest of judgment, which were overruled, and thereupon he was granted an appeal to this court, and a stay of execution pending his appeal. On the 17th day of May, 1904, the court by its order of record granted the defendant until the 15th day of August, 1904, to perfect a bill of exceptions. The bill of exceptions was not filed within the time allowed, but was filed on the 14th of March, 1905. The Attorney-General, in preparing this case for argument at this term, made the point that there was nothing before the court except the record proper, on the ground that the bill of exceptions was not filed in time. Thereupon, on the first day of this term, the defendant by his counsel moved this court to correct the record in this cause wherein the same relates to the order of the judge of the Dunklin circuit court, the judge before whom said cause was tried, extending the time for filing the bill of exceptions in said cause to November 1, 1904, which was filed in the office of the clerk of the circuit court on the 17th day of August, 1904, for the reasons, first, that said order extending the time for filing said bill of exceptions was made and signed by Judge James L. Fort on the 10th day of August, 1904, and within the ninety days allowed by the court for filing said bill of exceptions; second, because said order was delivered to J. L. Downing, Esq., one of the attorneys of the defendant, by Judge Fort on the 10th day of August, 1904, and the said Downing on the 11th

day of August, 1904, deposited the same in the postoffice at Malden, Missouri, in an envelope with the proper amount of postage thereon, and addressed to W. R. Satterfield, Esq., at Kennett, Missouri, but by reason of the absence of Mr. Satterfield from Kennett, he did not receive said order until the 17th of August, 1904, the day on which said order was filed in the office of the clerk of the circuit court. This motion is supported by the affidavits of Messrs. Downing and Satterfield, tending to establish the cause of the delay in filing said order of the judge of the court extending the time of the filing of the bill of exceptions in said cause to November 1, 1904. Whether this motion should be sustained presents the first question of importance in this case. The time originally granted for the filing of the bill of exceptions expired on the 15th day of August, 1904. The statute allowing bills of exceptions to be filed after the term at which such exceptions are taken is section 728, Revised Statutes 1899, and is in these words: "Such exceptions may be written and filed at the time or during the term of the court at which it is taken, or within such time thereafter as the court may by an order entered of record allow, which may be extended by the court or judge in vacation for good cause shown, or within the time the parties to the suit in which such bill of exceptions is proposed to be filed, or their attorneys, may thereafter in writing agree upon, which said agreement shall be filed by the clerk in said suit and copied into the transcript of record when sent to the Supreme Court or Courts of Appeals."

This court's jurisdiction in this case is appellate only. We have no power to alter or correct the records of the circuit court. In proper cases and upon sufficient data we may order the circuit court to conform its judgments to the judgment of this court, but it has been ruled that notwithstanding an appeal is pending in this court from the judgment of the circuit court, that court still retains full power and jurisdiction over its own

records and might by proper entries *nunc pro tunc*
cause the same to speak the truth where by inadver-
tence or misprision of its clerk it had not done so; but
it is elementary that this court could not cause the re-
cord of the circuit court to be corrected by an entry
*nunc pro tunc*, and this is what we are asked to do by
this motion.

We are all agreed that we have no power to correct
the record of the circuit court. Having reached this
conclusion, we are led to consider the effect of denying
the motion in this state of the record.

The original grant of time within which to file the
bill of exceptions expired on the 15th day of August,
1904, and unless the time had been extended before the
last-mentioned date, neither the court nor the judge
nor the parties could after that date make any further
extension.

The record of the clerk in vacation recites, "And
now on this 17*th day of August*, 1904, in vacation, comes
the defendant by his attorneys and files in the office of
the clerk of the circuit court the following *stipulation*
extending the time for filing bill of exceptions herein:

"State of Missouri, County of Dunklin.

"In the Dunklin County Court, May term, 1904.

"State of Missouri, v. Louis Eden, defendant.

"To the clerk of the circuit court, county and State
aforesaid: It is hereby ordered by the judge of said
court, in vacation, that the time for filing bill of excep-
tions in said cause be extended to November 1, 1904.

"J. L. FORT, Judge.

"Filed August 17, 1904."

This order bears no date and makes no recital of
the time when it was done. Are we required or ought
we to presume it was done before the original grant of
time had expired? The omission to date this order or
recite the date of its execution was a most unfortunate
omission if it was in fact made before the time had ex-
pired. The judge was exercising a power to act in va-

cation. The efficacy of his act depended on whether it was performed before or after the expiration of the time originally granted by the court within which to file the bill of exceptions.

Presumptions are often indulged in favor of the jurisdiction of courts of record, as such, but the powers executed by a judge in vacation are exceptional and must find express authority in statute or be such as have from time immemorial been recognized as inherent in the office of judge.

It is a fundamental principle that courts can exercise judicial functions only at such times and places as are fixed by law, and that the judges of courts can enter no orders in vacation, except such as are expressly authorized by statute. [4 Ency. Pl. and Prac., 337, note 2.] The presumption in this matter must be one of fact, and such a presumption must be based upon the common experience of human conduct and affairs and the connection usually found to exist between certain things. In view of the numerous cases in this court in which circuit judges have attempted to extend the time of filing bills of exceptions after the time allowed by the court had expired, it would be a most violent presumption to presume that an order extending the time in vacation had been made before the time expired. Certainly it would not accord with the common experience of this court in the enforcement of section 728, Revised Statutes 1899.

Being an exceptional act and given only by express statute in this State, we think the burden was on the defendant to see to it that his extension was either filed before the time expired or that the order of the judge was dated as of or recited a time before the original order expired by limitation. It is of grave importance that the records of our courts shall be kept so that all parties interested therein or affected thereby may be able to ascertain by application to the clerk when a judgment has become final or when exceptions

have been or will be filed if in vacation. We are unwilling to relax the ordinary rules of diligence in a matter of such importance. Our conclusion is that we are not authorized to indulge the presumption that the order extending that time was made before the original leave to file expired, and as the only date appearing is that of the filing, to-wit, August 17, 1904, the time had expired and the bill of exceptions does not appear to have been filed within the time allowed. There is, therefore, nothing before us for review except the record proper, and there is no contention that the indictment, arraignment or other proceedings on the trial were in any manner erroneous, and as in duty bound upon our examination we have discovered no reversible error.

II. As the life of the defendant is involved in the issue in this case, we have necessarily, in the examination of the record, become acquainted with the grounds upon which a reversal is sought. The first assignment of error is that the circuit court erred in denying defendant a continuance at the May term, 1904, but upon reference to the motion for a new trial this alleged error of the court will not be found among the grounds assigned for a new trial. So that, even if we were to hold the bill of exceptions a proper one, it is clear that the refusal of the continuance was waived by not assigning it as one of the grounds for a new trial. [State v. Mann, 83 Mo. 589; State v. Jewell, 90 Mo. 467.]

Looking further into the motion for a new trial, error was assigned in the giving of instructions for the State and of the court's own motion, but when we look at the so-called bill of exceptions it appears that no exceptions were saved to the action of the court in giving them. This is accentuated by another motion filed at this term of this court by counsel for appellant, conceding that their bill of exceptions does not contain any exceptions to the giving of the State's instructions, and stating that by the error of said attorneys said objec-

tions and exceptions were omitted, but asking this court for permission to correct said oversight. This, of course, we have no power to grant. If the bill of exceptions had ever become a part of the record, it would have been a finality when signed by the judge and filed with the clerk. [State v. Gartrell, 171 Mo. l. c. 505.] So that, even if the bill of exceptions had been properly incorporated in the record, the instructions given for the State and by the court of its own motion would not be open to review by this court, and hence no harm could accrue by not regarding the bill as a part of the record, so far as these instructions were concerned. Nor did the defendant request the court to instruct on all the law of the case or call its attention to the fact that it had failed to do so, so far as this so-called bill discloses.

The defendant asked two instructions defining murder in the second degree, which the court refused, but no exceptions were saved to their denial, and hence the bill of exceptions, if allowed, would not have availed to obtain a review of this refusal of the court to give these instructions. Thus we have in *favorem vitae* examined all the assignments of error urged by defendant's counsel in the light of the bill of exceptions, which we hold in law constitutes no part of the record. Of this defendant, of course, cannot complain, but we have been moved to do so on account of the grave consequence to defendant. As a matter of right and law defendant had no right to have this bill examined, but when examined it is clear that if it had become a part of the record it would not have availed him anything. The testimony which he has embodied in his so-called bill of exceptions evidences an unusually cold-blooded and deliberate murder of an unarmed and unoffending man.

In a word, it appears that the defendant was a resident of Malden in Dunklin county, and that the deceased Huff and his partner, Ed. Stockhouse, resided at Townley's Mill, a few miles north of Malden; that on the evening of the homicide the deceased, Huff and Ed.

Stockhouse and two girls by the name of Rogers, met
in the town of Malden, and after remaining there until
about nine o'clock, they started towards the country
where they all lived, walking along the railroad track.
It was practically conceded that the two young women
were of questionable character, and the deceased was
with them for an immoral purpose, although Stock-
house denied all knowledge of the bad character of the
girls. The deceased, Huff, and Dora Rogers were
walking together, and Stockhouse and Annie Rogers,
the first couple being in front. In walking along the
track they passed the defendant and one Wilson. As
the moon was shining they had no trouble in recogniz-
ing them. Defendant was sitting down, and Wilson
standing up; defendant had a shotgun in his hand, and
spoke to deceased and asked where he was going, to
which deceased replied, "He was going home;" defend-
ant then said, "Wait a minute," deceased replied, "Oh!
I guess not," defendant retorted, "I guess you will,"
and then fired. The load took effect in the lower part
of the face and neck of the deceased, causing him to
stagger and fall. The two girls ran, and defendant then
pointed his gun at the witness, Stockhouse, but finally
ran away without firing the other bullet. Stockhouse
moved deceased to one side of the track, went back to
town and reported the shooting to the town marshal and
a physician was summoned. The wounded man was
moved to the city hall, where he died at three o'clock
the next morning. About five o'clock that morning, de-
fendant was arrested at his home, his two brothers be-
ing in the room with him. Defendant admitted at the
time that he shot deceased, but said it was caused by his
thumb slipping off the hammer of his gun. The de-
fendant then produced his double barrel shotgun, and
one barrel was still loaded. On the evening of the hom-
icide and prior to the shooting, defendant brought his
gun down to Paxton's saloon, and got one of the bar-
tenders to take care of it for him; later on, about nine

o'clock, the defendant called for his gun and left the saloon; as he left, one witness heard him say, "I will go down and head him off and take him away from them or raise hell with them."

The defendant in his own behalf testified that he brought this gun down town, left it in Paxton's saloon, and afterwards called for it; that he and his two brothers and Will Fisk expected to go hunting. He admitted shooting the deceased, but said that when he told deceased to stop, deceased threw his hand back in his hip pocket, and pushed one of the girls to one side; he says that all the conversation he had with the deceased was to say, "Wait friend;" that when he asked deceased to stop and have a little fun, deceased replied, "We can stop and have a little hell." He denied making any threats in front of the saloon, and stated that he never knew deceased and Stockhouse prior to that night. He did not intend to do them any harm, but that he went down for the purpose of taking one of the girls away from them, after which he intended going hunting; that when the deceased pushed one of the girls aside and started towards him, defendant started to cock his gun right quick and his thumb slipped off the hammer and it fired. Although the defendant testified that his two brothers and Fisk were nearby when the shooting occurred, neither of them testified at the trial. If these were the facts, and this is the evidence which the defendant has filed with the record in this case, as his bill of exceptions, it abundantly established a case of murder in the first degree. It appears that the defendant with a loaded double-barrel shotgun deliberately preceded in advance of the deceased and his companions to a point on the road which he knew they would pass, and there stationed himself, and when they approached he called to the deceased to stop, and when the deceased declined to do so, without any provocation, he shot and killed him. This testimony indicates the motive, the

preparation, the threat, the lying in wait for the deceased, the shooting and the killing of the deceased without any excuse. It is not surprising that the jury refused to accept the defendant's theory of accidental killing, or the' other inconsistent defense of justifiable homicide in self-defense. The jury tried the cause, and rendered a verdict of guilty of murder in the first degree, and that verdict was approved by the trial judge, and, as before said, no error appearing in the record proper, and there being no bill of exceptions that we can recognize as such, the judgment is affirmed, and the sentence which the law pronounces is ordered to be executed.

All concur.