## LEON KAHN v. MERCANTILE TOWN MUTUAL INSURANCE COMPANY, Appellant.

### Division One, May 31, 1910.

1. **CONSTITUTIONAL OR FEDERAL QUESTION: Raised After Default: Too Late: Appellate Jurisdiction.** A failure to raise a constitutional or Federal question until the next term after defendant was required to plead and until default after judgment rendered at that term, makes the raising of such a question thereafter, in the motion to set aside, too late; and the judgment being for $1055.30, and there being no constitutional or Federal question that can be considered, the Supreme Court has no jurisdiction of the defendant's appeal.

2. **AMENDING RETURN: Relation: Time to Plead.** Courts will permit an amendment to the sheriff's return of a writ of sum-

mons to correspond with the facts of the case; and if the amendment be made even at a subsequent term, the return will relate back to the proper return date; and when the return is made, and thereupon defendant's motion to quash is overruled, it becomes defendant's duty to plead at the term at which his motion is overruled.

3. ——: ——: ——: Judgment by Default: Constitutional or Federal Question: Raised in Motion to Set Aside: Too Late. Where defendant at the October term filed a motion to quash the sheriff's return, and the court, without notice to defendant, overruled the motion and permitted the sheriff to amend his return, it became defendant's duty to plead at that term, and at that term, if the case involved a Federal or constitutional question, it was defendant's duty to raise it; but where defendant raised no such question at that term, or the next until after judgment by default, and at the next, after judgment by default had been rendered upon a judgment of a court in the Indian Territory, defendant filed a motion to set the same aside, on the ground that the court never acquired jurisdiction over defendant because of the defective service and return, and also because under the Constitution and Federal statutes plaintiff was not entitled to judgment, these Federal and constitutional questions were not timely raised, and the Supreme Court, because of them, does not acquire jurisdiction over defendant's appeal from the judgment overruling his motion to set aside.

4. SHERIFF'S RETURN: Amendment: Defendant's Right to Notice. The court has power to permit the sheriff to amend his return to harmonize with the facts, without notice to the defendant. It is the service of the writ and petition upon defendant, and not the return, that gives the court jurisdiction over the person of defendant. The return is merely the evidence by which the court is informed that the defendant has been served. If the original return was a false return, the court has the right, under the statute, to permit the sheriff to amend it, without notice to defendant. [Overruling, on this point, Little Rock Trust Co. v. S. M. & A. Ry. Co., 195 Mo. l. c. 689.]

*Held*, by VALLIANT, J., concurring, that the allowing of an amendment to a return being a matter in the sound judicial discretion of the court, and the statute which authorizes it not expressly requiring notice of the application to amend, the question of requiring notice is also within the sound judicial discretion of the court, and, therefore, if, in a given case, the trial court has allowed the return to be amended without notice, the ruling will not on appeal be held to be error, unless under the facts, the appellate court is satisfied the discretion was not judicially exercised and injury probably resulted. And where defendant entered a limited

appearance for the purpose of moving to quash the return, as was the fact in this case, defendant was bound to take notice of what the court did with its motion and of its rulings on the sufficiency of the return, and its rulings on the motion being based on the amendment, defendant had notice and the court did not abuse its discretion.

*Held,* also, that the practice of allowing a sheriff to amend his return has gone further than was originally contemplated, either by the General Assembly or by this court, and has reached a condition that calls for legislation to put a reasonable limit to the time in which an amendment should be allowed, and to require notice if the party to be affected is within reach.

Appeal from St. Louis City Circuit Court.—*Hon. Moses N. Sale,* Judge.

TRANSFERRED TO ST. LOUIS COURT OF APPEALS.

*Barclay, Shields & Fauntleroy* for appellant.

*Lee W. Grant* and *P. B. Kennedy* for respondent.

WOODSON, J.—The plaintiff instituted this suit July 14, 1905, against the defendant, in the circuit court of the city of St. Louis, based upon a judgment of the United States Court within and for the Southern District of the Indian Territory, for the sum of $1010.30.

Upon the same day a summons in the usual form was duly issued by the clerk of said court, returnable to the October term, and delivered to the sheriff of said city for service. Upon the same day said sheriff made the following return (Formal parts omitted):

"Served this writ in the city of St. Louis, Missouri, on the within named defendant, the Mercantile Town Mutual Insurance Company (a corporation), this 14th day of July, 1905, by delivering a copy of the writ and petition as furnished by the clerk to J. W. Daugherty, manager of the said defendant corpora-

tion, he being in said defendant's usual business office and in charge thereof. The president or other chief officer of said defendant could not be found in the city of St. Louis at the time of service."

Thereafter, at the October term, 1905, of said court, said defendant filed its (special and limited) motion to quash said return, for the reason that it is insufficient in law and does not confer jurisdiction over the person of the defendant.

While said motion to quash was pending, and without notice to defendant, the court, on October 13, 1905, at the same term, permitted the sheriff to amend his return by interlineation so as to read as follows (Caption and signature of sheriff omitted):

"Served this writ in the city of St. Louis, Missouri, on the within named defendant, the Mercantile Town Mutual Insurance Company (a corporation), this 14th day of July, 1905, by delivering a copy of the writ and petition as furnished by the clerk to J. W. Daugherty, manager of the said defendant corporation, he being in said defendant's principal office and in charge thereof. The president or other chief officer of said defendant could not be found in the city of St. Louis at the time of service."

Thereafter, but upon the same day, the court overruled defendant's said motion to quash.

On December 4, 1905, during the December term of said court, the court rendered judgment by default in favor of the plaintiff and against the defendant for the sum of $1055.30, the amount of the judgment, interest and costs due on the said Indian Territory judgment.

During the same December term of said court, the defendant filed therein the following special motion to set aside said default and judgment (Formal parts omitted):

"Defendant (appearing specially by its attorneys for the purposes of this motion only and for no other

purpose) moves this court to set aside the judgment rendered in the above entitled cause of Kahn v. Mercantile Town Mutual Insurance Company, for the following reasons, to-wit:

"1.   This court has no jurisdiction over the person of this defendant in this cause;

"2.   This court has not acquired jurisdiction over the person of this defendant in this cause;

"3.   This court has no jurisdiction over the subject-matter of this suit, under the United States statutes applicable to the Indian Territory which govern the subject-matter mentioned in plaintiff's petition;

"4.   The judgment herein is irregular because prematurely rendered;

"5.   The judgment herein is irregular because it was rendered by default, without any inquiry of damages;

"6.   Under the Constitution of the United States (art. 1, sec. 8) and the United States laws applicable to the Indian Territory, the said Territorial Court (mentioned in the petition herein) had no jurisdiction to enter the alleged judgment on which this suit is founded;

"7.   The said judgment was rendered in violation of the rights, privileges and immunities of defendant under the Constitution of the United States, art. 1, sec. 8, and art. 4, sec. 1, and the Fourteenth Amendment, sec. 1.

"8.   The petition is founded on an alleged judgment purporting to be filed therewith as an Exhibit, when in fact said Exhibit was not filed until November 16, 1905, and the judgment in this court thereon is therefore irregular;

"9.   The judgment by default was entered before the time for defendant to plead had expired;

"10.   The judgment herein is excessive;

"11.   The court erred in allowing an amendment of the return herein and entering judgment thereon."

And thereafter, at the same term, December 8, 1905, defendant filed its motion in arrest, as follows (Caption omitted):

"Defendant (appearing specially by its attorneys for the purposes of this motion only and for no other purpose) moves this court to arrest the judgment in the above entitled cause of Kahn v. Mercantile Town Mutual Insurance Company, for the following reasons, to-wit:

"1. The petition does not state facts sufficient to constitute a cause of action.

"2. The court had no jurisdiction over the person of this defendant to render judgment against this defendant at the time when said judgment was rendered;

"3. This court has no jurisdiction over the subject-matter of this suit."

At the February term of said court defendant's said motions to set aside said judgment and in arrest of judgment were by the court overruled. The defendant properly excepted to each of said rulings of the court.

From the judgment of the circuit court, the defendant duly appealed the cause to the St. Louis Court of Appeals.

On February 5, 1907, the latter court handed down an opinion, written by BLAND, P. J., in which the other judges concurred, affirming the judgment of the circuit court in all things. In due time the defendant filed a motion for a rehearing. The record here does not disclose what disposition was made of that motion.

Thereafter, the defendant also filed in said Court of Appeals a motion to transfer said cause to this court, for the following reasons, stated:

"1. Defendant, in the trial court, by its motion duly filed, claimed immunity from the judgment rendered herein, invoking Federal statutes cited in appellant's brief and argument in this court.

"The said claim of appellant was presented in the most formal way to the circuit court by motion, of which the following is a part, and the same points were made in this court." (Then follows a copy of the third, sixth and seventh reasons assigned by defendant in its motion filed in the circuit court, asking that court to set aside the default and judgment rendered therein against it.)

Proceeding: "The Federal laws put the Indians and their reservations under protection of the United States, and persons asserting rights in that country must do so under Federal statutes. We claim that those statutes do not warrant or authorize the judgment sued upon in this case. That is a question involving the construction of Federal law alone, and as such it is distinctly a Federal question falling within the reviewing authority of the Supreme Court." (Citing certain cases.)

"2. Under the Constitution and laws of Missouri, the question of the extent of jurisdiction of the Federal courts in the Indian Territory and of the limits of the jurisdiction of the tribal courts under the Federal statutes are questions of Federal cognizance which must be finally determined by the Federal judicial authority. If your Honors will read the brief heretofore submitted in this appeal, you will see that some of the contentions of appellant depend upon Federal legislation and a construction of the Federal statutes relating to the subject-matter involved in the case. Under the uniform course of decisions of the State and Federal courts, a Federal question is involved in this appeal; and, therefore, it should be transferred to the Supreme Court for final adjudication.

"The briefs heretofore submitted in this court distinctly raised these questions. They were duly raised in the trial court. We respectfully submit that every proper step was taken to bring the case within the appellate reviewing jurisdiction of the Supreme Court

of the State and of the U. S. Supreme Court, in event the decisions of the State courts should be adverse to the claims made by this appellant under the Federal statutes.

"The State and Federal decisions support this view, and upon their authority we most respectfully request that this cause be transferred to the Supreme Court." (Citing authorities.)

"The idea advanced in the learned opinion, that the recital in the pleadings shown only by the record of the judgment of the court in the Indian Territory (as sued upon) will support the judgment, does not avoid our point (based on the Federal cases) to the effect that parties residing in the domain of the civilized tribes (of which the Chickasaws are one) are not subject to the U. S. Courts there, except in special circumstances not averred or shown here." (Citing cases.)

"Wherefore, appellant renews its prayer for a transfer to the Supreme Court."

This motion to transfer the cause to this court was, by the following order of the Court of Appeals, sustained, *viz*: "Now at this day it is considered and adjudged by the court that the judgment rendered herein by this court on the 5th day of February, 1907, be set aside and for naught held and esteemed; and that the opinion filed herein be withdrawn; and the court now being of the opinion that a question involving the construction of a Federal statute is in the cause for determination, doth order and adjudge that this cause be transferred to the Supreme Court of this State for determination."

I. In our opinion this cause was erroneously transferred to this court by the St. Louis Court of Appeals, for the reason that if any constitutional or Federal question is involved herein, it was not timely and properly raised in the circuit court; and, there-

fore, was waived, and cannot for that reason be considered on appeal. [Sheets v. Iowa State Ins. Co., 226 Mo. 613.]

The record shows that this suit was begun in the circuit court of the city of St. Louis, July 14, 1905, returnable to the October term thereof. Upon the same day the sheriff served the writ and petition upon the defendant and made his return thereon to the effect that he served the defendant by delivering a copy of the writ and petition to J. W. Daugherty, manager of the defendant, he being in said defendant's "usual business office and in charge thereof."

During the same term the defendant appeared specially and moved the court to quash the return because it was illegal and not sufficient to give the court jurisdiction over the person of the defendant. During the pendency of that motion, and at the same term of court, the sheriff by leave of court amended his return so as to show that he served the writ and a copy of the petition on said Daugherty, manager of the defendant, "he being in said defendant's *principal* office and in charge thereof." By comparing the two returns, it will be observed that the amendment consisted in erasing from the original return the words "usual business" and interlining in lieu thereof the words "principal office," as it appears in the amended return.

At the same October term, but subsequent to the amendment, defendant's motion to quash the service was by the court overruled. No further action was taken by either party to the suit during the October term; but the cause went over to the next December term of said court. On December 4th, and during the December term, there having been no answer filed in the cause, judgment by default was rendered against the defendant for the sum of $1055.30. Thereafter, during the December term, the defendant filed its mo-

tion to set aside the default and the judgment so rendered against it, and thereby, for the first time, attempted to inject into the cause the Federal questions alleged to be involved in the case. Clearly, that was too late.

The defendant was summoned to appear at the October term of the court, and under the law it was its duty to answer during that term. While it is true defendant filed its motion to quash the sheriff's return of service, yet that fact only excused it from answering during the pendency of that motion, which was overruled during the October term. When that motion was overruled it then became the duty of the defendant to plead or answer the petition, at which time it could and should have raised the Federal questions now urged upon our attention. But having failed to so plead or answer, it was in default, and, consequently the judgment by default was properly rendered against it, which was done at the December term.

This court at an early date held that the courts of this State will permit amendments to be made to the return of a writ to correspond with the facts of the case; and if the amendment be made even at a subsequent term, the return will relate back to the proper return day.    [Webster v. Blount, 39 Mo. 500.] This has been the universal practice in this State ever since that opinion was written.

The only excuse counsel for defendant offers for not answering upon the overruling of the motion to set aside the default is that the circuit court had no jurisdiction to allow the sheriff to amend his return without notice to the defendant. In support of that position counsel cite, and rely upon, the case of Little Rock Trust Co. v. Southern Missouri & Arkansas Ry. Co., 195 Mo. l. c. 689. While there is a *dictum* of that character in that case, yet it was not necessary to be stated in order to have properly reached a conclusion in that case, as we will presently try to demonstrate.

That was an erroneous conception of the law. It was the service of the writ and petition upon the defendant, and not the return that gave the trial court jurisdiction over the person of the defendant. The return was merely the evidence by which the court was informed that the defendant had been served. The original return was a false return and would not have justified the court in finding therefrom that the defendant had been properly served; but by the amended return, which in no manner or form changed the actual service had upon the defendant, but bespoke the truth thereof and correctly informed the court that the defendant was in fact properly served. The defendant was no more entitled to notice of the making of the amended return than he was entitled to notice of the making of the original return. Insofar as the defendant is concerned, both stand upon the same footing. Besides this, sections 657 and 660, Revised Statutes 1899, make it the duty of the sheriff, when he has made an erroneous return, to amend it so as to make it conform to the facts; and the law is too well settled to need the citation of authorities to show that the sheriff would have been liable on his official bond for damages for making a false return had he not corrected the same and had injury resulted to plaintiff in consequence thereof.

This court, in the case of Scruggs v. Scruggs, 46 Mo. l. c. 273, in discussing the right of the sheriff to amend his return, said: "The right of a sheriff to amend a defective return, on leave of the court, is beyond question, and it makes no difference that he is out of office. Such amendments, in appropriate cases, are allowed even on application of the sheriff's administrator. And there is no specific limitation of time within which this class of amendments must be made; although, after a lapse of years, the court should grant applications with great caution, lest the rights of innocent third parties should be injuriously affected. Such

applications are not granted as a matter of right. The granting of them rests in the exercise of a sound discretion on the part of the court. 'Amendments of this description,' says the court in Johnson v. Day, 17 Pick. 108, 'are not regulated by any certain rules; but the court is bound in every case to exercise a sound discretion, and to allow or disallow an amendment, as may best tend to the furtherance of justice. The forms of the court are always best used when they are made subservient to the justice of the case.' [Blaisdell v. Steamer Wm. Pope, 19 Mo. 157; Webster v. Blount, 39 Mo. 500; Stewart v. Stringer, 45 Mo. 113; Welsh v. Joy, 13 Pick. 477; Fowble v. Walker, 4 Ohio 64; 4 How. 45; Gwynne on Sheriffs, 471; Haven v. Snow, 14 Pick. 28.]"

This has been the universal holding of this court from that date to this. [Feurt v. Caster, 174 Mo. l. c. 298, where the rule announced in the Scruggs case is quoted with approval.]

Returning to the case of Little Rock Trust Co. v. Southern Missouri & Arkansas Ry. Co., supra, in discussing the right of the sheriff to amend his return, the court, on page 689, said: "The first contention of the defendants is that the service of the summons which was directed to Dittenhoefer and the Southern Missouri & Arkansas Railroad Company, but which was served on the St. Louis, Memphis & Southeastern Railroad Company, by delivering a copy to the local agent of that company, was insufficient in law to bring the St. Louis, Memphis & Southeastern Railroad Company into court, even if it had been a party defendant to the action (which it was not), because the return did not specify that the service was had upon such agent at the business office of said company, as required by section 995, Revised Statutes 1899. This subject has been so lately adjudicated by this court in Williams v. Dittenhoefer, 188 Mo. 134, that it is unnecessary to further elaborate it. The respondent, however, passes over

this contention and seeks to parry its effect by show-
ing that since the submission of this case in this court,
the sheriff, without notice to the defendant, filed an
amended return which showed that the service was
had on the agent of the company at its place of bus-
iness. This proceeding was without notice, and there-
fore is not binding on the defendants, as a sheriff has
no absolute right to amend a return. The right to
amend a return rests in the sound judicial discretion
of the court, and the party to be affected by the amend-
ment has a right to a day in court before the court has
a right to permit the amendment. [Feurt v. Caster,
174 Mo. 289.]''

In that case, it must be remembered that the
amendment was made *after the cause had been submit-
ted in this court;* and the facts of that case do not
show that the amendment was made by leave of the
circuit court or that the amended return had ever been
brought properly before this court on a suggestion of
a diminution of record. But be that as it may, the
learned judge who wrote that opinion cites no author-
ity for the position there taken, except the case of
Feurt v. Caster, 174 Mo. 289. By inspecting the latter
case it will be clearly seen that there is nothing in it
which lends even a color of semblance to the doctrine
announced in the former case. The latter case was a
suit in ejectment, and the facts were the plaintiff's
deceased wife owned a hundred and sixty acres of land
in Daviess county, and he claimed a life estate therein
by the curtesy, which was sold under execution issued
on a judgment rendered against him in favor of Ellen
Gilreath, his mother-in-law. The defendant became the
purchaser of the land at that execution sale, and went
into possession thereof. Some years later, the plain-
tiff in the latter case, who was the defendant in the
Ellen Gilreath suit, claimed that his estate by the cur-
tesy was not subject to execution sale, for the reason

that he claimed a homestead right therein.  This court in discussing that case, among other things, said:

"The plaintiff claims that the judgment is void, and therefore may be attacked in this collateral proceeding, because the return of the sheriff on the summons issued in the case of Ellen Gilreath against him was insufficient in law to confer jurisdiction over his person, in that it simply recited: 'I hereby certify that I executed the within writ in the county of Daviess, State of Missouri, on the 21st day of August, 1896, by leaving a copy of the same at the usual place of abode of Benjamin F. Feurt, with a member of his family over the age of sixteen years,' while the statute requires not only that a copy of the writ shall be served upon the defendant, but also a copy of the petition shall be served upon him, and this return does not show that a copy of the petition was so served upon the defendant in that case (the paintiff in this case) and therefore the court never had any jurisdiction to render a judgment against the defendant in that case, and the judgment is void, and hence, open to collateral attack.

"On the other hand, the defendant claims that the land in controversy never was the homestead of plaintiff, and hence his estate by the courtesy was subject to execution; and, further, that the judgment aforesaid is not void, but only voidable or irregular, and that such irregularities were only subject to attack by the defendant in that case itself, and are impervious to attack in this collateral case; and, also, that the trial court erred in refusing to permit the sheriff to amend his return so as to show that a copy of the petition, as well as of the writ, was served on the defendant in that case. The defendant offered the evidence of the deputy sheriff who served the writs, which tended to show that a copy of the petition was attached to the writ, and that he served both at the same time by leaving them at the defendant's usual place of abode with a member of his

family over the age of sixteen years, but the deputy
sheriff could not remember who such person was or
whether it was a man or woman, but was certain that
whoever it was was over the age of sixteen years. He
also said he never served any other writs upon the
plaintiff herein. On the other hand, the plaintiff
proved by his stepdaughter, Mrs. Sinnie Cathcart, that
some one, she could not say who, gave her some pa-
pers, she did not know what they were, and asked her
to give them to her stepfather, the plaintiff, and that
she did not do so. She also said she would be nineteen
years old on April 5, 1901. The writ in question was
served August 21, 1896. So that she was only fourteen
years old at the time of the service. On motion of the
defendant, however, the court struck out all her testi-
mony, because she did not identify the person who
served the papers, as being the deputy sheriff who
served the writ in question. Hence, her testimony is
not open to consideration in this case in this state of
the record.

"The defendant, however, contends that the sher-
iff had a right to make the amendment, and that evi-
dence that the proposed amendment was untrue was
inadmissible, for the reason that if the amended re-
turn be false, the party aggrieved would have a rem-
edy on the sheriff's bond, just as if the original return
had been as the proposed amendment contemplated,
and that such remedy is exclusive. *Per contra,* the
plaintiff claims that such amendment is not a matter of
right with the officer, and can only be made by leave
of court granted in the exercise of a sound judicial dis-
cretion, and that it ought not to be allowed in this case,
because a right of action against the sheriff on his
bond is now barred by limitation.

"The trial court entered judgment for the plain-
tiff, and the defendant appealed."

This court, after holding that plaintiff had no
homestead in the land, proceeded:

"It is contended that the trial court erred in refusing to allow the sheriff to amend the return upon the summons in the case of Mrs. Gilreath against the plaintiff.

"Two reasons are urged in support of this contention: first, that the sheriff had an absolute right to amend, being liable on his bond if the amended return be false, and therefore evidence that the proposed return is untrue is inadmissible; and, second, that under the evidence adduced in support of the application for leave to amend the return, the court ought, in the exercise of a sound judicial discretion, to have permitted the amendment.

"The defendant cites Phillips v. Evans, 64 Mo. l. c. 23, as authority for his first contention aforesaid. In that case it is said: 'The return of the officer is conclusive, as to the facts therein recited, except in an action for a false return.  . . And the same reasons which would forbid any contradiction of the returns when made, must operate with equal and controlling potency in precluding evidence to show that a proposed amendment is untrue.'

"Substantially the same rule was laid down in Stewart v. Stringer, 41 Mo. l. c. 404. But on second appeal of the same case (45 Mo. 113) the power of a sheriff to amend a return without due leave of court was denied."

Then follows the quotation before made from the Scruggs case, supra.

Proceeding, the court said: "In McClure v. Wells, 46 Mo. l. c. 314, it was said: 'Leave should be granted to amend the return in accordance with the facts. Such amendments are always freely allowed in aid of a judgment, although denied where their effect is to create error.'

"In addition to this, any doubt that may heretofore have existed by reason of the divergent views expressed in the cases cited is removed and the question

set at rest by sections 657 and 660, Revised Statutes 1899, which provide that before or after final judgment 'the court may, in furtherance of justice,'and on such terms as may be just, amend,' if after judgment, 'in affirmance of such judgment' and if before judgment 'in furtherance of justice,' 'any record, pleading, process, entries, returns, or other proceedings in such cause,' etc.

"By these statutes the power to allow amendments is vested in the court, to be exercised upon such terms as may be just, and the officer is not given any absolute power of amendment, and this must hereafter be taken as the rule of law in such cases.

"The second contention is not so easy of solution. The trial court refused to permit the sheriff to amend the return, because he could not identify the person upon whom he served the papers. As herein stated such amendments are allowed in the exercise of a sound judicial discretion, but as well said in McClure v. Wells, supra, 'such amendments are always freely allowed in aid of a judgment.' And whilst this court is always loth to interfere with discretionary rulings of trial courts, nevertheless such rulings are not conclusive upon this court, and where they are interfered with it is because that discretion exercised by the trial judge is not a personal discretion, but a judicial discretion, and because the ultimate responsibility for every judgment rests upon the court of final resort to which the case is taken, and therefore that court is in duty bound to approve or reject all rulings of lower courts even when made in the exercise of a judicial discretion. [17 Am. and Eng. Ency. Law (2 Ed.), pp. 844-5, and cases cited in notes.]

"It is with these principles in mind that the decision of the question under consideration is approached and reached.

"It is certain that some sort of papers were left by some one for the plaintiff at his usual place of

abode, about the time the case of Mrs. Gilreath against the plaintiff was begun. The deputy who served these papers swears positively that these papers consisted of a copy of the writ and a certified copy of the petition attached to the writ, for he says he remembers stopping in the shade to rest his horse just before he reached the plaintiff's house, and that he took the papers out of his pocket and examined them to see that they were all right and then put a rubber band around them, and proceeded to the plaintiff's house. He also swears that he never served any other papers on the plaintiff or had any to serve on him at any other time. He also remembers that after leaving the plaintiff's house he proceeded further on his way and served a summons upon a neighbor, to serve on the grand jury. But he is unable to remember upon what member of the plaintiff's family he served the papers, and does not know whether it was a man or a woman, an old or a young person, but is sure it was on some one who was over sixteen years old, whom he found in the plaintiff's house, and who was pointed out to him, by the plaintiff's young son, whom he found at the front fence, as a member of the family.

"It appears by other testimony that at the time of the service the plaintiff's family consisted of his son, Gabe Feurt, aged twenty years, his stepdaughter, Mrs. Sinnie Cathcart, aged fourteen years, his son, Frank Feurt, aged eleven years, and his daughters Bertha and Mary, aged ten and three years, respectively. Gabe Feurt swears the papers were not served on him. Mrs. Sinnie Cathcart said some one, she did not know who, gave her some papers, she did not know what, at a time she could not specify, and told her to give them to her stepfather and that she did not do so. Upon motion of the defendant her testimony was struck out because of her inability to identify the person who served the papers on her. And this ruling was unquestionably correct, in the abstract, but taken

in connection with the testimony of the deputy sheriff, it is not altogether clear that it was incompetent. The objection that she could not identify the person goes rather to the probative force of her testimony than to its competency in this case, where it appears on all sides that there never was but one set of papers served upon the plaintiff. The testimony of the deputy sheriff made it sure what papers were served, and when they were served, but left it uncertain upon whom they were served, while the testimony of Mrs. Cathcart cleared up that uncertainty, by showing that the papers were served upon her and that she was at that time only fourteen years old. Hence, the testimony of these two witnesses related to the same and the only transaction of this kind that ever happened, and the one was the fitting complement of the other. But the defendant moved to strike out Mrs. Cathcart's testimony, and so he cannot complain, and the plaintiff submitted to the ruling, so he cannot complain. This leaves the application of the sheriff to amend supported only by the testimony of the deputy sheriff; and he is unable to say upon whom he served the papers. Gabe Feurt was the only member of the plaintiff's family who was over sixteen years old at that time, and he swears the service was not on him. It is shown by other testimony that Mrs. Cathcart was there at the time and that she was only fourteen years old.

"Under such a showing it cannot fairly be said that the trial court failed to exercise a sound judicial discretion in refusing to allow the sheriff to make the amendment proposed. It would be a wise provision of law if the officer serving process upon a member of a family should be required to state in his return the name of such member of the family."

At the cost of considerable time and labor we have stated the substance of the facts in the Feurt-Caster case, and quoted fully therefrom all this court there

said regarding the right of a sheriff to amend his return.

It will be observed from reading the quotations from that case that not a word is said about the defendant being entitled to notice before the court could legally permit a sheriff to amend his return. In fact, in that case it was the defendant who was insisting that the amendment should be made, and consequently in the very nature of the case he was not entitled to notice; and as to the plaintiff, who was the defendant in the Gilreath case, he was there in court resisting the amendment, not for want of notice, but because, as he contended, the proposed amendment was not true in fact.

From these observations it must be clear that there was not and there could not have been a question of notice involved in that case. Therefore, in no sense can it be logically contended that it supports the *dicta* of the learned judge who wrote the opinion in the case of Little Rock Trust Co. v. Railroad, supra.

Not only that, but in the Feurt-Caster case the defendant who was insisting upon the return being amended was no party to the suit in which the original return was made and which was asking that it be amended.

There is no statute, text-book or adjudication which has been called to our attention, or which we have been able to find, which holds that the defendant is entitled to notice before the sheriff can amend his return by permission of court, except the *dicta* stated in the Little Rock Trust Co. case; and by reading that case it will be seen that those remarks of the judge were wholly unnecessary to a proper disposition of the case, for the obvious reason that the St. Louis, Memphis & Southeastern Railroad Company, which was sought to be brought in by the amendment, was not a party to the suit; and, clearly, if the amendment

had been allowed it would not have supported a judgment against it.

We, therefore, hold, as above stated, that it was the duty of the defendant in the case at bar to have answered the petition filed herein at the time the circuit court overruled its motion to quash the sheriff's return; and, having failed to do so, and thereby having failed, at the time, to raise the Federal questions now presented, they were waived, and cannot be considered on appeal. [Sheets v. Iowa State Ins. Co., supra.]

Having reached this conclusion, and there being no fact or question involved in the case which confers jurisdiction upon this court, the cause should be transferred back to the St. Louis Court of Appeals. It is so ordered.

All concur.

## SEPARATE CONCURRING OPINION.

VALLIANT, J.—Whilst concurring in the opinion of my learned brother WOODSON in this case I have some other views on this subject that I wish to express. The allowing of an amendment to a return being a matter in the discretion of the court, the sound judicial discretion, and the statute which authorizes it not expressly requiring notice of the application to amend, the question of the requiring of notice is also in the sound judicial discretion of the court, and therefore if, in a given case, the trial court has allowed the return to be amended without notice, the ruling will not on appeal be held to be error, unless under the facts shown by the record, the appellate court is satisfied the discretion was not judiciously exercised and injury probably resulted. The facts of this case illustrate what I am trying to say; this defendant was not in court by force of the return as it was originally made. But he entered a limited appearance for the purpose of moving to quash the return; he was there-

fore in court for that purpose, and was bound to take notice of what the court did with his motion to quash and its ruling on the question of the sufficiency of the return. Pending that motion the court allowed the return to be amended and its ruling on the motion was presumably based on that amendment. The defendant therefore had notice and the court did not abuse its discretion in not requiring notice to be given.

In my opinion the practice of allowing a sheriff to amend his return has gone farther than was originally contemplated, either by the General Assembly or by this court, and has reached a condition that calls for legislation to put a limit on it. As the law now stands an indefinite number of years may have passed, conditions may have changed, the party's remedy on the sheriff's bond may amount to nothing, the sheriff himself may have died and his administrator is allowed to amend the return.

The statute says the amendment may be allowed when it would be in furtherance of justice, and in an early case cited by Judge Woodson in his opinion, McClure v. Wells, 46 Mo. 311, the court said: "Such amendments are always freely allowed in aid of a judgment, although denied where their effect is to create error." What was there said may have been well said as applied to the facts of that case, but not for universal application. If in fact an original return is false there is no more reason for allowing it to be amended to support a judgment than to defeat the judgment. For example, if the original return shows that defendant was duly served with the process and on that return a judgment by default was entered, yet in fact the return was false, the judgment rests on a false basis, and it would be as much in furtherance of justice to allow the sheriff to amend the return which would defeat the judgment as it would if the conditions were reversed.

It would not be in furtherance of justice to allow an amendment of a return to aid an unrighteous judgment, but would be to allow it to expose the error. Justice is no more concerned in upholding a righteous judgment than it is in defeating an unrighteous judgment.

But this practice to which I have alluded is of too long standing and is supported by too many decisions of this court to be now within the province of the judiciary to change it, but it is a matter which deserves the attention of the General Assembly. The statute ought to be amended so as to put a reasonable limit as to the time in which an amendment of a return should be allowed and to require notice if the party to be affected is within reach. *Lamm, P. J.,* and *Graves, J.,* concur.