## St. Louis & Peoria R. R. Co. v. Kerr et al.

1. *Assignment of Errors.—Who May Assign.*—Under section 70 of the Practice Act, where a judgment is rendered against two or more persons, either of said persons may remove the suit by appeal or writ of error to the Appellate Court, and for that purpose are permitted to use the names of all, if necessary; but no cost can be taxed against any person who does not join in the appeal or writ of error, the manifest

St. L. & P. R. R. Co. v. Kerr.

object of this provision being to give each defendant the right to present any point affecting him, which he may desire the court to determine, whether his co-defendants are content with the judgment or not. Parties to the judgment who do not join in the appeal or writ of error will not be allowed to enter their appearance in the Appellate Court for the purpose of assigning errors.

2. *Assignment of Errors by Parties Not Joining in an Appeal.*—Where a party to a judgment did not join in an appeal, but afterward entered his appearance in the Appellate Court, and obtained leave to assign errors, the errors so assigned will be stricken from the record on motion of the appellees.

3. *Rights of Parties Not Joining in the Appeal.*—As a party not having appealed, can assign no error, so parties who have appealed, can assign no error which affects only the rights of the parties not appealing.

4. *Contractors' Liens—Sub-contractors.*—Contractors for work in the construction of a railroad have a lien expressly given them by the statute (Par. 55, Chap. 82, R. S.) superior to all mortgages or other liens accruing after the commencement of the work. Provision is made for the protection of sub-contractors to the extent of the price agreed upon between the corporation and the sub-contractor, and he acquires a lien against the railroad company by giving the notice prescribed by the statute, and complying with its provisions.

5. *Parties—Mortgage Given to Secure Bonds.*—The rule is well settled that where a mortgage is given to secure bonds, which are negotiable by delivering, the trustee named in the mortgage is to be deemed the representative of the bondholders, and may litigate in their behalf. They are not necessary parties whether the trustee is complainant or defendant, or whether the mortgage is a prior or subsequent incumbrance; it is sufficient if the trustee is a party. The general rule that all persons who have an interest in the controversy must be made parties, has an exception in such a case.

6. *Interest—Sub-contractor's Lien.*—A proceeding to enforce a lien by a person as a sub-contractor against a railroad company is a proceeding to enforce a liability for money due on an instrument in writing, and is within the terms of the statute allowing interest.

**Memorandum.**—Suit in equity to enforce a sub-contractor's lien. Appeal from a decree rendered by the Circuit Court of Madison County; the Hon. ALONZO S. WILDERMAN, Circuit Judge, presiding. Heard in this court at the May term, A. D. 1892, and affirmed. Opinion filed October 31, 1892.

## APPELLEES' STATEMENT OF THE CASE.

The complainants filed their bill in the Circuit Court of Madison County, against A. M. Wing and D. L. Wing, com-

posing the firm of A. M. Wing & Co., the St. Louis & Peoria Railroad Company and the Central Trust Company, of New York, the object of which was to enforce a lien against the property of the railroad company. A. M. Wing & Co. were the original contractors with the St. Louis & Peoria Railroad Company for the construction of a railroad from Mount Olive, in Macoupin County, to Alhambra, in Madison County, and the Central Trust Company was the mortgagee of the said railroad. The complainants were sub-contractors under A. M. Wing & Co. The Circuit Court, by its decree, established a lien in favor of the complainants, superior to the lien of the mortgage, for the amount found due, $4,604.82, and interest thereon from the time the suit was brought, $479.33, and in the aggregate $5,184.15. From this decree the St. Louis & Peoria Railroad Company only, has appealed.

Conkling & Grout, solicitors for appellant.

### Appellees' Brief.

Where the railroad is incomplete when the mortgage is executed, and in process of construction, the contractor's lien takes precedence over the mortgage. Wood on Railways, Vol. 2, Sec. 292; Brooks v. Railway Co., 101 U. S. 443; Meyer v. Hornby, Ibid. 728; Construction Co. v. Meyer, 100 U. S. 457; Neilson v. Railroad Co., 44 Iowa, 71.

The Central Trust Company was not a necessary party to this bill, but a proper party. The rule is, without exception, that if a proper party is omitted, the objection must be taken by demurrer, plea or answer. 1 Daniell's Ch. Pl. and Pr., page 285, note 2.

The following authorities, among many, clearly establish the proposition that it was not necessary to make the holders of these bonds parties to the bill. Jones on Railroad Securities, Sec. 438 *et seq.;* Shaw v. Norfolk R. R. Co., 5 Gray (Mass.), 162; Board of Supervisors v. Min. Point R. R. Co., 24 Wis. 93; Corcoran v. Chesapeake & O. R. R. Co., 94 U. S. 741; Kerrison v. Stewart, 93 U. S. 155; Van Vechten v. Terry, 2 Johns. Ch. (N. Y.) 197.

BROWN, WHEELER & BROWN, attorneys for appellees.

OPINION BY THE COURT.

The appellees filed their bill in chancery in the Circuit Court to enforce a lien claimed by them as sub-contractors against the railroad of the appellant.

The bill made parties defendant, the appellant, A. M. Wing & Co., the contractors, and the Central Trust Company, trustee of certain mortgage bonds issued by appellant.

The Circuit Court rendered a decree finding that the complainants in the bill were entitled to their lien as against all the defendants for the sum of $5,184.15, and ordered payment of the same within sixty days, in default of which the road was to be sold. An appeal was allowed to all the defendants or any of them upon filing bond, etc.

The appellant, the railroad company, alone perfected an appeal by filing bond in pursuance of the order of the Circuit Court, and caused a copy of the record to be filed in this court, and assigned error upon said record. Subsequently, during the May term, the Central Trust Company, D. L. Wing and A. M. Wing entered their appearance in this court and obtained leave to assign errors. Afterward the appellees moved to strike from the record the assignments of error by the trust company and by D. L. & A. M. Wing. This motion was taken by the court and reserved to the hearing of the case. It must now be disposed of. By section 70 of the Practice Act it is provided that where a judgment or decree is rendered against two or more persons either of said persons shall be permitted to remove the suit by appeal or writ of error to the Appellate Court, and for that purpose shall be permitted to use the names of all if necessary; but no cost shall be taxed against any person who shall not join in said appeal or writ of error; and that such suits shall be determined in the same manner as if all the parties had joined in said appeal or writ of error.

In Hodson v. McConnel, 12 Ill. 170, one of several defendants to whom an appeal was allowed had not joined in the appeal, but assigned error, and the appellee joined in

errors. Afterward the appellee objected to the consideration of errors so assigned by him, who had not appealed, but the Supreme Court held the objection came to late.

We have not been referred to any ruling more directly in point. The statute permits the appeal to be prosecuted by one of several parties, and for that purpose the names of all may be used as far as necessary; but no cost shall be taxed against one who does not join in the appeal, and the case shall be determined in the same manner as if all had appealed. The manifest object was to give each defendant the right to present any point affecting him and which he might desire the court to determine, whether his co-defendants were content with the judgment or not. It was not designed that he should complain of matters not affecting him, but in order that all matters of which he might properly complain should be fully considered, it was provided that the case should be determined as though all parties had joined in the appeal, and the whole record was in all respects to be examined. But, as we take it, such examination is only for the purpose of considering errors properly assignable by him who appeals.

It is a matter of frequent ruling that one can not assign error upon a point not affecting him, and can not ask a reversal for errors which are not hurtful or prejudicial to his interests.

The statute expressly relieves from all cost a co-defendant not joining in the appeal, and, as a matter of course, such a party having given no security for the payment of the judgment, incurs no risk whatever by reason of the appeal. We are inclined to the opinion that he can not assign error and we shall consider in the present case, only the errors assigned by the appellant company. The errors assigned by D. L. Wing and A. M. Wing and by the Central Trust Company will be stricken out.

The first assignment of error argued in the brief is that the court allowed complainants for a portion of the work at the price fixed in the contract for " hard pan," when it should have been regarded as only ordinary earth work and paid for accordingly.

This position is based upon the provision of the contract by which, as it is argued, the estimate of the engineer was to be conclusive, and also upon the proposition that the evidence fails to show there was any hard pan. It is not denied by counsel for appellees that by the contract the estimate of the engineer was controlling, but it is said the contractors did not themselves comply with the contract in this respect; that the estimates which were furnished while the work was progressing were not complete and were not so regarded by either side or by the engineer, and that the final estimates were not only not made and furnished when the contract required, but were held back at the instance of D. L. Wing, who was the president of the railroad company and the active man in the firm of A. M. Wing & Company, the chief contractors, and further that the estimates are impeachable for fraud or mistake.

It is shown that the estimates which were furnished while the work was in progress were not complete and were not so regarded. At least there is evidence tending to establish this view of it. There is also abundant proof that the requirement of the contract, in this respect, was disregarded by the chief contractors. The engineer, while nominally and perhaps in fact the employe of the railroad company, was apparently under the control of D. L. Wing, who was acting in the double capacity of president of the railroad company and chief contractor.

At Wing's instance the final estimates were withheld from the appellees, the sub-contractors, though they made repeated requests therefor, and were not produced until shortly before the cause was tried, two years or more after they were due. According to evidence of the appellees the engineer had promised to make proper estimates for hard pan, which he had omitted in the two incomplete estimates furnished while the work was in progress. It was unknown to the appellees whether, in the final estimates, this item was or would be allowed or not, and they were permitted to see these estimates until a short time before the hearing. Here was a clear breach of the contract. The engineer, who was pre-

sumably the employe of the railroad company, as he professed, and who should have been impartial and perfectly fair in making the estimates, was subject to the control of D. L. Wing.

There was evidence tending to show, not only breach of contract, but want of good faith on the part of Wing & Co., who were able thus to control the action of the engineer in a matter where they were deeply interested. Add to this the satisfactory proof that there was a large amount of work which by the terms of the contract should have been classified as "hard pan," and we think there was enough to warrant a court of equity in disregarding the estimates so far as they omit such classification.

It was quite evident the estimates could not be relied upon as the unbiased judgment and conclusion of the engineer, and that they were subject to the suspicion of having been the inspiration, if not the direct creation of the contractors. We are of opinion there was no error committed by the court in making allowance for "hard pan."

The estimates were properly disregarded in that respect.

It is next urged that the appellees did not take such steps as to secure to them a lien superior to that of the mortgage held by the Central Trust Company.

If we are correct in holding that said Central Trust Company, not having appealed, can not assign error, it would seem that this question can not now arise.

It is not apparent how the railroad company can be affected by the question, nor how it can affect Wing & Co., unless there are conditions to which our attention has not been directed. By the contract between the railroad company and Wing & Co., payments were to be withheld in such a way as to protect the railroad company from loss, by reason of unpaid claims of contractors, it being therein provided that the bonds and stock of the railroad company, which Wing & Co. were to receive for building the road, were to be placed in the hands of parties in New York, to be paid out by them upon certificates of the executive committee of the railroad company, at the rate of ninety per cent

of the work done, and on acceptance of the road, the balance; and further, it required Wing & Co. to furnish evidence to the directors of the railroad company of the completion of the road, according to contract, and that the property was free from liens or incumbrances, etc. The sub-contract was made and work begun under it before the mortgage was executed.

The property mortgaged was in process of construction when the mortgage lien was created, though if the railroad company and the contractors complied with their contract the bonds were not delivered then, nor were they all deliverable until the road was completed and free from liens arising in course of its construction.

The contractors had a lien expressly given them by the statute superior to all mortgages or other liens accruing after commencement of the work. Par. 55, Ch. 72, R. S.

By the following section provision is made to protect sub-contractors to the extent of the price agreed to be paid by the corporation to the chief contractor. The sub-contractor acquires a lien upon the property of the corporation by giving the notice prescribed in the section next following. The notice was given in this instance by the sub-contractors, and this suit was commenced within the time provided by the statute. It is clear that as against the railroad company a statutory lien was acquired by the steps thus taken.

It is urged that by the second proviso of Par. 56, the sub-contractor could not obtain privity over an existing lien and that by the proviso of Par. 57, the lien did not attach until the notice was given.

So far as the railroad company is concerned the question is not important whether the lien attached from the time the notice is given, or whether it relates back to the time work was commenced under the sub-contract.

In either case there is a lien upon the road, and whether that lien takes precedence of a mortgage executed after the work began and before the notice was given, is a matter affecting only those who claim by virtue of that mortgage. The railroad company could not rightfully pay Wing & Co.

until the expiration of twenty days from the time the sub-contract was furnished, and by the terms of the contract between the railroad company and Wing & Co., as already observed, care was taken to protect the former against loss in this respect. Havighorst v. Lindberg, 67 Ill. 463.

We are of opinion the railroad company can make no complaint in this respect.

Another objection urged is that the holders of the bonds which the mortgagee was given to secure were not made parties. We are not able to see how this objection, if well founded, can be made by the railroad company.

The objection should have been raised in the Circuit Court, which was not done by the appellant or by the trust company, and should not be made for the first time in this court.

But the rule seems to be well settled that where a mortgage is given to secure bonds which are negotiable by delivery, the trustee named in the mortgage is to be deemed the representative of the bondholders and may litigate in their behalf. They are not necessary parties, whether the trustee is complainant or defendant, or whether the mortgage is a prior or a subsequent incumbrance. It is sufficient if the trustee is a party.

The general rule that all persons who have an interest in the controversy must be made parties, has an exception in such a case. Shaw v. Norfolk, etc., R. R. Co., 5 Gray, 162; Jones on R. R. Securities, Sec. 338; Land Co. v. Peck, 112 Ill. 408.

The objection will be overruled.

It is objected lastly that the court erred in allowing interest upon the amount found due.

This was a proceeding to enforce a liability for money due on an instrument in writing, and the claim is within the terms of our statute, as we regard it.

The mere fact no definite sum is fixed by the writing and that the amount due rests in computation makes no difference. We think interest was properly allowed.

The decree will be affirmed.