J. H. COERVER, PHILIP J. KEALY, LAWRENCE E. SMITH, OLIVER WROUGHTON AND WILLIAM GRIEVES, APPELLANTS, v. CRESCENT LEAD & ZINC CORPORATION, BAYER-RHODES MACHINERY COMPANY, AND MACHINERY & SUPPLY COMPANY.

Division One, July 30, 1926.

**1. EQUITY: One Mechanic's Lien: Other Encumbrance.** Under the statute (Secs. 7241, 7242, R. S. 1919), one of the purposes of every mechanic's lien suit, where only one mechanic's lien on the property is claimed and any other lien or encumbrance exists, is to determine the priority of these liens, and to this extent at least the suit becomes one in equity.

**2. MECHANIC'S Lien: Necessary Parties: Bondholders under Deed of Trust.** In a suit to enforce a mechanic's lien on property encumbered by a deed of trust given to secure the payment of bonds, only the mortgagor and trustee, and not the bondholders, are necessary defendants, where none of the creditors of the mortgagor is named in the deed of trust; the bonds were payable to bearer; the property, and all rents, income and profits arising therefrom were conveyed outright to the trustee; the bonds were delivered to the trustee, who was given power to authenticate them by its signature as trustee and to deliver them to the mortgagor's president and take his receipt therefor; in the event insurance money should not be used within a reasonable time to restore damaged or destroyed build-

ings, the trustee was empowered to apply it on the secured indebtedness; the trustee was empowered to receive deposits to pay off and discharge the secured indebtedness, and upon full payment thereof to enter satisfaction upon the record of said deed of trust, and execute whatever instrument was necessary to vest the property in the grantor or its assigns, and the trustee was nominated and appointed the agent, representative and attorney-in-fact of all the bondholders to act for them as fully as they might act for themselves. The trustee invested with such powers by a mortgage or deed of trust represents the bondholders in the mechanic's lien suit, and the grantor and trustee are the only necessary defendants. And being in court for all purposes, the bondholders were bound by any valid judgment entered in said suit.

3. LEASE: Judicial Sale: Insufficient Notice. A judicial sale of a mining lease upon insufficient notice is not void, if the purchaser is a stranger to the judgment and does not participate in the irregularity. It is the duty of the sheriff to give the notice, and if the notice is insufficient, or no notice at all were given, the sheriff is liable to the debtor for any damages resulting from an omission of his duty, where the purchaser is a stranger to the judgment and there is no collusion or fraud and no participation by him in the omission.

4. RETURN: Amendment. The statute (Sec. 1277, R. S. 1919) authorizes the court to amend the sheriff's return in affirmance of the judgment, not in avoidance of a judgment rendered and entered at a previous term.

5. ————: Mechanic's Lien Suit: Service on Watchman of Domestic Corporation. Service upon the watchman "at and in the business office" of a domestic corporation, the principal debtor in the mechanic's lien suit, in the absence from the business office of the corporation's president or other chief officer, where the duties of the watchman took him to and through various buildings and improvements of an extensive mining plant, and to the business office at night when no business was transacted, or if his services were required there during the day it was because all business activity had ceased at the mine and he was there only as a care-taker of the premises, is not service "at any business office with the person having charge thereof," and is void; and the judgment in a mechanic's lien suit against said principal debtor, and against a trustee in a deed of trust executed by said debtor, although said trustee is properly served, is likewise void.

6. PLEADING: Cause of Action. A bill charging fraud in the sale of property at a judicial sale for a grossly inadequate sum, alleging facts in support thereof, and asking foreclosure of a mortgage, the appointment of a receiver, a general accounting and for general equitable relief, states a cause of action in equity.

7. CORPORATION: Stockholders' Meeting: Notice: Waiver. The statutory requirements relating to notices of stockholders' meetings (Secs. 11919-11932, R. S. 1919) are for the benefit of stockholders, and not for the benefit of the public, are merely directory, and may be waived. If no stockholder complains of the notice of a meeting at which a mortgage deed of trust upon the corporation's properties was authorized to secure the payment of bonds, the claimant to a mechanic's lien upon the corporate properties cannot complain.

8. ————: ————: Equity: Clean Hands: Qualifications. The maxims of equity that "he who seeks equity must do equity" and "he who comes into equity must come with clean hands" are subject to the important qualifications that the equity which the party seeking equity is required to do must arise from and belong to the transaction as to which he seeks relief, and the misconduct must relate to the very transaction concerning which complaint is made. Where the matter of which bondholders complain is a mechanic's lien judgment, the claimant or purchaser at a judicial sale

thereunder is not by these maxims entitled to complain that a mortgage deed of trust on the properties and the securities therein mentioned were illegal because no sufficient notice was given of the meeting of the stockholders of the corporate defendant at which they were authorized. The giving of the deed of trust and the execution of the bonds was a transaction in no wise connected with the mechanic's lien judgment, and therefore was not a transaction that should cause equity to look askance.

9. ————: **Recording Mortgage: Notice: Mechanic's Lien Suit.** The judgment in the mechanic's lien suit being void, it is immaterial whether the mortgage deed of trust under which the bondholders ask for an accounting was recorded in the county where the properties were located or in the county where the corporate mortgagor was domiciled, since no question of notice is left in the case.

---

Corpus Juris-Cyc. References: **Appeal and Error,** 4 C. J., Section 2541, p. 649, n. 36. **Corporations,** 14a C. J., Section 2661, p. 665, n. 23; Section 2909, p. 807, n. 88; Section 2917, p. 809, n. 28. **Equity,** 21 C. J., Section 151, p. 172, n. 13; Section 155, p. 177, n. 43; Section 163, p. 180, n. 89; Section 173, p. 187, n. 54; Section 179, p. 193, n. 96; Section 180, p. 193, n. 5. **Judgments,** 33 C. J., Section 52, p. 1092, n. 76; 34 C. J., Section 1423, p. 1003, n. 46, 47; p. 1004, n. 50, 51. **Mechanic's Lien,** 40 C. J., Section 504, p. 370, n. 13, 16, 17; Section 754, p. 507, n. 43 New; Section 758, p. 509, n. 84. **Pleading,** 31 Cyc., p. 116, n. 50. **Process,** 32 Cyc., p. 540, n. 62 New. **Statutes,** 36 Cyc., p. 1147, n. 30. **Watchman,** 40 Cyc., p. 537, n. 10.

Appeal from Jasper Circuit Court.—*Hon. Grant Emerson,* Judge.

REVERSED (*with directions*).

*Harding, Murphy & Tucker* and *Ryland, Boys, Stinson & Mag* for appellants.

(1) Plaintiffs' names as beneficiary bondholders of the deed of trust being easily ascertainable and no effort having been made by Boyer Company to make them parties to the mechanic's lien suit, that judgment did not bind them. Landau v. Cottrill, 159 Mo. 308; Langdon v. Klademan, 278 Mo. 236; Russell v. Grant, 122 Mo. 161; Redlands v. Lumber Co., 194 Mo. App. 650; R. S. 1919, secs. 7225, 7229, 7231. (a) Service on the trustee of the mortgage was not service on bondholders. Stafford v. Fizer, 82 Mo. 398; Lumber Co. v. Oliver, 65 Mo. App. 435; 2 Black on Judgments (2 Ed.) sec. 585; 2 Perry on Trusts (6 Ed.) sec. 873; Baker v. Central Trust Co., 235 Fed. 17, 31; Curtis v. Leavitt, 15 N. Y. 9. (b) The lien suit was a legal proceeding. Western Co. v. Boyce, 74 Mo. App. 343. (2) The lessees' interest and the improvements thereon, including the property sold, were an interest in or affecting real estate, and the ten days' advertisement of sale of the property, as personal property, and the sale thereunder, were void. R. S. 1919, secs. 1624, 1625, 1649; Kirk v. Mattier, 140 Mo. 23; Barnsdall v. Gas Co., 225 Pa. 338, 26 L. R. A. (N. S.) 614; 27 Cyc. 690; Tiedeman on Real Property, secs. 2, 75; 18 R. C. L. p. 1173, sec. 83. (3) The attempted service of summons on the Mining Company by serving only a watchman living on the abandoned mining premises, the company having

no office or place of business in Jasper county, was void.  It was void for the additional reason that the undisputed proof showed that the superintendent in charge of the plant was in the county at the time.  R. S. 1919, sec. 1192; State ex rel. v. Meyers, 126 Mo. App. 544; Holtschneider v. Railroad, 107 Mo. App. 381; Mining Co. v. Cattle Co., 187 Mo. 420.  (a)  The sheriff's return is amenable to conform to the facts even in this court.  Feurt v. Carter, 174 Mo. 289; Sebole v. McKinnies, 217 S. W. 577.  (b)  The service being void as to the principal debtor, the judgment was void as to any other party to the suit.  Wibbing v. Powers, 25 Mo. 599; Russell v. Grant, 122 Mo. 161, 179; Ashburn v. Ayres, 28 Mo. 75.  (4) Plaintiffs' bonds were voted by unanimous resolution of the directors who at the time were owners of a great majority of the Mining Company's stock.  Since the bond issue, neither the Mining Company nor any stockholder has ever questioned its validity.  Defendants are in no position to complain.  Reisterer v. Lumber Co., 160 Mo. 141.  Besides the by-laws of the company framed by the stockholders authorized in advance the issuance of bonds by the directors. (5)  The manner in which the sale and bidding were conducted and the grossly inadequate sale price fully warrant setting it aside. Plaintiffs will gladly pay the judgment and interest and all expenses less amounts realized from sale of the property as a condition precedent to the relief prayed.  Van Graafieland v. Wright, 286 Mo. 414; Rogers & Baldwin Hdw. Co. v. Building Co., 132 Mo. 442; Mangold v. Bacon, 237 Mo. 496.

*A. W. Thurman* for respondents.

(1)  The plaintiffs' petition does not state a cause of action in equity, as no equitable ground is alleged; there was no fraud or mistake on any other equitable ground alleged of equitable cognizance; if any action was stated it was an action at law in behalf of the trustee.  The court should have sustained the defendants' objection to the introduction of the testimony and should have sustained the defendants' demurrer at the close of the testimony.  A bill of equity is not the proper remedy for the recovery of title or possession; the remedy is at law.  Janey v. Spadden, 38 Mo. 395; Odle v. Odle, 73 Mo. 289; Medicus v. Altman, 203 S. W. 637.  The mere stating that the defendants claim some interest in the property does not entitle the plaintiffs to equitabe relief.  Cole v. Parker Washington Co., 276 Mo. 266.  The action of the alleged directors in authorizing a bond issue without assent of the stockholders was contrary to the statutes of Missouri, and was contrary to what is generally termed the "Blue Sky Law."  Being a party to an unlawful agreement or in the assistance in violating the law, equity will not give him relief.  It is contrary to public policy.  Morrison v. Juden,

145 Mo. 282; 21 C. J. secs. 157, 178, 180. (2) The court committed error in receiving evidence in behalf of the plaintiffs to impeach the sheriff's return. The return recites that the summons and the certified copy of the original petition was served upon J. L. Poorman, who was then and there and ever since was in charge of the business office, usually had and maintained in the transaction of the business, that said Poorman was the agent in charge. It further certified that the president and other chief officers were absent from said county and not found. The return was sufficient under Sections 1191, 1192, 1193, R. S. 1919. Bedell v. Richardson Lubricating Co., 211 S. W. 104. The return should receive a reasonable and natural interpretation; it must be fairly construed and the effect must be fairly given in meaning. Davis v. Jacksonville, S. E. Line, 126 Mo. 75; State ex rel. v. Sale, 232 Mo. 166; Hill v. Ore & Steel Co., 90 Mo. 103. The sheriff's return was conclusive, and cannot be impeached. Boon Co. v. Lowry, 9 Mo. 24; State ex rel. Beck v. Finn, 100 Mo. 429; Newcomb v. N. Y. Central Railroad, 182 Mo. 687. (3) It was error for the court to admit the chattel mortgage offered in evidence by the plaintiff because the execution thereof was denied under oath and because there was no showing of any authority given by the stockholders or by any legal authority to execute the same. There was no evidence that the stockholders ever held a meeting to adopt by-laws as provided by law. R. S. 1919, sec. 9726. The original articles of association provided for three directors. There was no proper proof of the calling or convening of said directors or stockholders and no proof of any resolution authorizing the execution of the mortgage, and the same was void. There was no proof of the publication of the notice for sixty days or waiver thereof. Sec. 9741, R. S. 1919; Hill v. Coal Mining Co., 119 Mo. 9; Johnson v. School District, 67 Mo. 320. (4) These parties not only attempted to violate the law but did so. Any person or persons, agent or agents, who shall attempt to sell stock or bonds or any other security of any domestic or foreign corporation, who have not complied with the laws of the State, shall be guilty of a misdemeanor. R. S. 1919, secs. 11920, 11931. The power to prohibit persons of a corporation from disposing of bonds without compliance therewith is within the proper police power of the State. Bank of Bernie v. Blades, 247 S. W. 806; Hall v. Giger-Jones Co., 242 U. S. 538, 61 L. Ed. 480; 2 Parsons on Contract (9 Ed.) p. 746; Landwher v. Lingenfelder, 249 S. W. 723; Caldwell v. Stock Yards Co., 242 U. S. 598; Schmidt v. Stortz, 236 S. W. 694; Merrick v. Halsey, 242 U. S. 568, 61 L. Ed. 498. The mortgage and bonds secured were void because they were contrary to the statutes and public policy of the State, and they were void for the reason that they were not authorized by the legally constituted directors or stockholders as required by the statutes. In

re Astell Engineering & Iron Works, 278 Fed. 743; In re Post, 219 Fed. 171, 135 C. C. A. 69. (5) The mortgage was void as to creditors because the Crescent Lead & Zinc Company by its articles of association and charter fixed its residence in Kansas City, Jackson county, and it is admitted that its chattel mortgage was neither filed nor recorded in the county of its residence. Sec. 2256, R. S. 1919, provides that chattel mortgages shall be recorded or filed in the county where the mortgagor or grantor executing the same resides. The filing of a chattel mortgage in Jasper county was void as to creditors. Bank of Malden v. Wayne Heading Co., 200 S. W. 693; Rice, Stix & Co. v. Sally, 176 Mo. 107; Jones on Chattel Mortgage (5 Ed.) 253; Pelton v. Transportation Co., 37 Ohio St. 450; In re Federal Contracting Co., 212 Fed. 688; Galveston Railroad Co. v. Gonzales, 151 U. S. 504, 38 L. Ed. 248; Fairbanks Steam Shovel Co. v. Wills, 60 L. Ed. 841.

ATWOOD, J.—Appellants, who were plaintiffs below, are the owners and holders for value of a $50,000-bond issue dated and issued on or about September 1, 1918, by respondent Crescent Lead & Zinc Corporation, a Missouri corporation, having its chief office at Kansas City in Jackson County, Missouri. The bonds were secured by a mortgage deed of trust, Peoples Trust Company of Kansas being named therein as trustee, on the corporation's mining plant, machinery and lease in Jasper County, Missouri, and plaintiffs went to trial before the court on their second amended petition seeking an accounting and a personal judgment against said corporation, the foreclosure of said mortgage, a deficiency judgment, the appointment of a receiver, and for general equitable relief.

Other outstanding facts pleaded and in evidence are that in November, 1920, respondent Boyer-Rhodes Machinery Company, claiming a mechanic's lien against said mining plant, machinery, equipment and lease of said Crescent Lead & Zinc Corporation, filed its lien statement in the office of the Circuit Clerk of Jasper County, Missouri, and afterwards, on November 17, 1920, filed its petition to enforce the same, making only the Crescent Lead & Zinc Corporation and Peoples Trust Company of Kansas City parties defendant; that after service was had upon these defendants default judgment was entered against them on September 22, 1921, in favor of said Boyer-Rhodes Machinery Company in the Circuit Court of Jasper County, Missouri, in the sum of $1130.35, the same being declared a lien on said lease, mining plant, machinery and equiqment, prior to the lien of defendant Peoples Trust Company, as to said mining plant, machinery and equipment, and subject thereto as to the lease. Under special execution issued on this judgment, returnable at the January, 1922, term of said court, the mining plant, machinery and equipment

were on November 18, 1921, sold by the sheriff at public sale upon ten days' notice as in sales of personal property under execution, and respondent Machinery & Supply Company became the purchaser for the sum of $1500, which amount was paid to the sheriff, who after paying the debt and costs booked a balance of $225.90 as a refund to defendants, and duly made return of said execution.

Defendant Crescent Lead & Zinc Corporation filed its written entry of appearance, waiver of service of process, and separate answer herein admitting its incorporation, the execution and delivery of said deed of trust and bonds, and non-payment of the indebtedness evidenced thereby, and Peoples Trust Company of Kansas City filed written waiver of service of process upon it in said cause and entered its appearance.

Defendants Boyer-Rhodes Machinery Company and the Machinery & Supply Corporation filed separate answer, denying each and every allegation of plaintiffs' petition, except that they were Missouri corporations having their principal offices at Joplin, Missouri. Further answering they said that between April 10, 1920, and September 8, 1920, the said Boyer-Rhodes Machinery Company sold to defendant Crescent Lead & Zinc Corporation, mining machinery, fixtures and personal property which entered into and became a part of the buildings and mining plant erected upon the lease of the said Crescent Lead & Zinc Corporation, with the knowledge and consent of plaintiffs and the Peoples Trust Company. Further answering they specifically pleaded said mechanic's lien suit, foreclosure and sale, alleging that all persons having an interest of record in the property were made parties to said suit, as provided by statutes relating to mechanics' liens, and that the judgment rendered therein was a final adjudication as to all persons claiming rights in said property. Further answering, said defendants, alleged that the mortgage here sued on and referred to in plaintiffs' petition was a chattel mortgage, neither filed nor recorded in the office of the Recorder of Deeds of Jackson County, Missouri, the residence of said Crescent Lead & Zinc Corporation, and these defendants had no notice that any of the plaintiffs were interested in said property, and none was disclosed by any public record. Further answering they alleged that said mortgage and bonds were illegal and void; that their issue was never authorized by the stockholders or directors of the Crescent Lead & Zinc Corporation, and that they were issued in violation of the Constitution and statutes of Missouri; that said plaintiffs gave their consent to the improvement of said property and the creation of said lien, and said Peoples Trust Company was, by the terms of said mortgage, nominated and appointed as the attorney in fact of all the holders of said bonds, and was authorized to pay all mechanics' liens and other liens superior to said mortgage lien, and at the time

said mechanics' lien was filed, if there were any bonds outstanding, the same were due and in default, and if said mortgage had any validity said Peoples Trust Company was the record owner of said property, and that none of said plaintiffs have any interest in or lien upon the same; that the Machinery & Supply Corporation of Kansas purchased said property at said execution sale and thereafter sold it to the Machinery & Supply Corporation of Missouri, which is now the owner and in possession of said property, and that neither the Boyer-Rhodes Machinery Company, nor any of the plaintiffs, has any interest therein.

Plaintiffs filed reply denying each and every allegation of the above answer, and further answering, plaintiffs said that the defendants, especially the Boyer-Rhodes Machinery Company, had actual knowledge of said mortgage prior to the filing of said lien statement, that said mortgage was actually recorded in the office of the Recorder of Deeds of Jasper County, Missouri, where said lease and improvements were situated, and defendant Boyer-Rhodes Machinery Company with such knowledge having made the trustee in said mortgage a party defendant and having caused judgment entry to be made in said lien suit determining priorities, said defendants are estopped to deny the validity of said mortgage.

The circuit court found the issues in favor of the plaintiffs and against defendant Crescent Lead & Zinc Corporation and found that said corporation is indebted to plaintiffs on the bonds in the sum of $65,380.57, decreed judgment, and directed that execution issue therefor. The court further decreed that in the event said corporation should fail to pay said judgment on or before June 15, 1923, the mortgaged premises described in plaintiffs' petition should be sold at public vendue for cash, plaintiffs first giving twenty days' notice of the time and place of sale by advertising in a daily newspaper as provided by law for the sales of real estate. It was further decreed that if the mortgaged property sold as aforesaid be not sufficient to satisfy said debt, damages and costs, that the residue be levied out of other goods, chattels, lands and tenements of said Crescent Lead & Zinc Corporation, and that on the sale of such property said Crescent Lead & Zinc Corporation and all persons claiming by, through or under it be forever barred and foreclosed of all right, title, claim, lien or equity of redemption in said mortgaged premises. The court further decreed that on the sale of said mortgaged premises the title of the purchaser should be free and clear of all rights, claims, interests and titles of every party to this suit and those claiming by, through or under them except as to the defendant Machinery & Supply Corporation as hereinafter provided. The court further found and decreed that the defendant Peoples Trust Company never had or claimed any interest in said mortgaged premises except as

trustee under said deed of trust, and having failed and refused to act in the foreclosure thereof it neither has nor claims any interest in said mortgaged premises, legal or equitable. The court further found and decreed that in the mechanics' lien suit filed by the Boyer-Rhodes Machinery Company, the Peoples Trust Company was duly made a party and lawfully summoned in said action; that said action was an equitable action and that since it was and is provided by the statutes of this State that in such equitable action only those whose interests appear of record need be made parties thereto, and since none of the plaintiff bondholders appear by the record to have any interest in said property it was not necessary in order to bind them that they be made parties to said action, and the court further decreed and found that service on said trustee was service on plaintiff bondholders and that, therefore, plaintiffs were barred by said suit from all right, title and interest in and to the property sold to defendant Machinery & Supply Corporation. The court thereupon considered, ordered and adjudged that plaintiffs' bill be dismissed as to defendants Machinery & Supply Corporation and Boyer-Rhodes Machinery Company, and that plaintiffs take nothing by their petition against them, and that said defendants recover from plaintiffs their costs and that execution issue therefor.

Appellants' principal assignments here urged as error are:

1. That the machanics' lien judgment did not bind them because, (a) they were not made parties defendant in the mechanics' lien suit; (b) service on the trustee named in the mortgage was not service on the bondholders; and (c) the lien suit was a legal proceeding.

2. That the mining lease together with the improvements thereon, the improvements being the property sold, were an interest in real estate, and that execution sale of said improvements upon ten days' notice is void.

3. That the service of summons on the Crescent Lead & Zinc Corporation in the lien suit was void; that the sheriff's return should have been made to conform to the facts; and that the service being void as to the principal debtor the judgment was void as to other parties to the suit.

4. That the sale price was so grossly inadequate as to warrant setting the sale aside.

I.   At the close of all the evidence the court on its own motion gave the following declaration of law with reference to service of process in the mechanics' lien suit, which we copy just as it appears in appellant's abstract of the record: "The court declares the law to be that service of process on the mortgagor the Peoples Trust Company, Trustee in the deed of trust introduced in evidence, parties of record, was as a matter of law suffi-

**Necessary Parties.**

cient to bind the bondholders in said deed of trust.'' Plaintiffs at the time duly excepted to this action of the court, presented the point in their motion for a new trial, and urge it here as reversible error. Plaintiffs also requested the court to give a declaration of law stating the converse of the above, which request was denied, exception saved, and the court's ruling thereon is here assigned as error.

The record does not clearly indicate upon what theory of the case this declaration was given, but from the answer of the two defendant machinery companies and from the judgment entry it may be inferred that the court and these defendants assumed that the mechanics' lien suit came within the purview of Section 7241, Revised Statutes 1919 (Laws 1911, p. 314), providing that ''all persons claiming any lien or encumbrance upon, and all persons having any rights in or against and all owners and lessees of said property to be affected and any of it, *all as may be disclosed by the proper public records,* shall be made parties to said action,'' etc. (Italics ours.) If so, the assumption was groundless. The Act of 1911, found at pages 314 and 315, Laws of 1911, provides an equitable proceeding for the adjudication in one suit of two or more mechanics' liens existing as to the same or part of the same property, exclusive as to cases within its purview, and distinct from the legal action elsewhere provided in the article on mechanics' liens, but this procedure is not available where, as in this case, there is only one mechanics' lien claimed against the property. Section 7242, Revised Statutes 1919 (Laws 1911, p. 315): ''This equitable action shall not apply to instances in which there is only one mechanic's lien claimed against the property and any of it, but in any suit thereon the court shall determine the respective priorities as between such mechanic's lien and any other lien or incumbrance and enforce the same accordingly.'' However, it does not follow that the mechanics' lien suit now before us was a proceeding directed solely to legal relief. The statute last above quoted provides that in any suit where only one mechanics' lien is claimed against the property ''the court shall determine the respective priorities as between such mechanics' lien and any other lien or encumbrance and enforce the same accordingly.'' Since the enactment of this statute one of the purposes of every mechanics' lien suit, where there is only one mechanics' lien claimed on the property and any other lien or encumbrance exists, has been and is to determine the priority of these liens, and to this extent at least the case becomes one in equity. [Huggins v. Hill, 236 S W. 1051, 1. c. 1053.] Prior to this amendment mechanics' lien suits generally were regarded in Missouri as actions seeking only legal relief, and our general rule was that beneficiaries in a deed of trust, whether prior or subsequent to the mechanics' lien, should be made parties to the lien suit if their interests were to be affected.

Section 7225, Revised Statutes 1919, was so construed, and in Hicks v. Schofield, 121 Mo. 381, Landau v. Cottrill, 159 Mo. 308, and a long, unbroken line of decisions, we so held. The new law and the old stand *in pari materia,* and construing them together in this case we are brought face to face with the question, were the bondholders in contemplation of law made parties to these proceedings? If so, they are concededly bound by any valid judgment rendered therein.

The question is thus raised and disposed of in Black on Judg-- ments (2 Ed.) sec. 585: "Whether, in an action to redeem or to foreclose a mortgage of the trust estate, or to enforce a debt of the trust which is specifically chargeable upon, or payable out of, particular property, it is necessary that all the *cestuis que trustent* should be joined as parties, is not fully settled. The English cases apply the general rule in this instance. But the majority of the American cases hold, that in such cases, the trustee may represent the beneficiaries, and the latter will be bound by the decree in the absence of fraud."

The doctrine allowing this exception is clearly stated by Mr. Chief Justice Waite in the leading case of Kerrison, Assignee, v. Stewart, 93 U. S. 155, l. c. 160:

"It cannot be doubted, that, under some circumstances, a trustee may represent his beneficiaries in all things relating to their common interest in the trust property. He may be invested with such powers and subjected to such obligations that those for whom he holds will be bound by what is done against him, as well as by what is done by him. The difficulty lies in ascertaining whether he occupies such a position, not in determining its effect if he does. If he has been made such a representative, it is well settled that his beneficiaries are not necessary parties to a suit by him against a stranger to enforce the trust (Shaw v. Norfolk Co. R. R. Co., 5 Gray, 171; Bifield v. Taylor, 1 Beat. 91; Campbell v. R. R. Co., 1 Woods, 376; Ashton v. Atlantic Bank, 3 Allen, 220); or to one by a stranger against him to defeat it in whole or in part. [Rogers v. Rogers, 3 Paige, 379; Wakeman v. Grover, 4 Id. 34; Winslow v. M. & P. R. R. Co., 4 Minn. 317; Campbell v. Watson, 8 Ohio, 500.] In such cases, the trustee is in court for and on behalf of the beneficiaries; and they, though not parties, are bound by the judgment, unless it is impeached for fraud or collusion between him and the adverse party.

"The principle which underlies this rule has always been applied in proceedings relating to railway mortgages, where a trustee holds the security for the benefit of bondholders. It is not, as seems to be supposed by the counsel for the appellants, a new principle developed by the necessities of that class of cases, but an old one, long in use under analogous circumstances, and found to be well adapted to the

protection of the rights of those interested in such securities, without subjecting litigants to unnecessary inconvenience.''

The rule followed in Missouri is thus stated in Story on Equity Pleadings (10 Ed.) sec 150: ''It has been laid down by Lord Redesdale as a general rule, that, where any persons are made trustees for the payment of debts and legacies, they may sustain a suit, either as plaintiffs or as defendants, without bringing before the court the creditors or legatees, for whom they are trustees, which, in many cases, would be impossible. And the rights of the creditors or legatees will be bound by the decision of the court, when fairly obtained for or against the trustees. In such cases, the trustees, like executors, are supposed to represent the interests of all persons, creditors, or legatees. Indeed, the impracticability of making the other persons parties, would seem of itself a sufficient ground for dispensing with them.'' [Miles v. Davis, 19 Mo. 408; Rumsey v. Peoples Railway Co., 154 Mo. 215; Cotton Co. v. Smith, 144 Mo. App. 169.]

This doctrine is applied in mechanics' liens suits. Boisot on Mechanics' Liens, Section 532: ''In a case of a railroad mortgage to a trustee, securing a large number of bonds negotiable by delivery, and passing freely from hand to hand, so that it is difficult if not impossible for the claimant to learn their names, it is not necessary to make the bondholders parties to a suit to foreclose a mechanic's lien on the road, the trustee being deemed their representative.''

In Illinois where mechanics' lien suits are expressly governed by chancery practice, this doctrine is held applicable and is thus stated in St. L. & P. Railroad Co. v. Kerr, 48 Ill. App. 496, l. c. 504 (affirmed in 153 Ill. 182): ''But the rule seems to be well settled that where a mortgage is given to secure bonds which are negotiable by delivery, the trustee named in the mortgage is to be deemed the representative of the bondholders and may litigate in their behalf. They are not necessary parties, whether the trustee is complainant or defendant, or whether the mortgage is a prior or a subsequent incumbrance. It is sufficient if the trustee is a party. The general rule that all persons who have an interest in the controversy must be made parties, has an exception in such a case. [Shaw v. Norfolk Railroad Co., 5 Gray, 162; Jones on Railroad Securities, sec. 338; Land Co. v. Peck, 112 Ill. 408.]''

The impracticability of making bondholders whose names do not appear in the deed of trust parties to the lien suit is here apparent, and it only remains for us to determine whether in the case now up for consideration the Peoples Trust Company of Kansas City, trustee named in the mortgage deed of trust, occupied such a position as to bring the case within the doctrine of this exception so that service of process on the trustee was service on the bondholders. None of the creditors secured by the mortgage deed of trust were named

in the instrument. The bonds were payable to bearer. The property and all rents, royalties, income and profits, arising therefrom were conveyed outright to the trustee, and the bonds were delivered to the trustee who was given power to authenticate the same by its signature as trustee and deliver them to grantor's president or his order and take receipt therefor. In event insurance money should not be used within a reasonable time to restore damaged or destroyed buildings *the trustee was empowered to apply the same on the secured indebtedness. The trustee was empowered to receive deposits to pay off and discharge the secured indebtedness and* upon full payment of said indebtedness to *enter satisfaction upon the record* of said mortgage deed of trust and execute such deed, instrument or instruments as might be necessary to vest the property, assets, leases, leasehold rights, estate and estates so mortgaged and conveyed, in the grantor, its successors or assigns, *and the trustee or its successor was thereby nominated and appointed as the agent, representative and attorney in fact of all of the bondholders so to do,* all the bondholders agreeing to present their bonds and coupons for payment at the office of said trustee and surrender the same for cancellation upon receiving payment thereof. The trustee was also given power to enter satisfaction of said mortgage deed of trust upon the record without producing the bonds or coupons secured thereby, provided the trustee should first make and file with the Recorder or Register of Deeds where this mortgage deed of trust was recorded, an affidavit stating that all the bonds and coupons secured thereby had been paid, or that sufficient sums had been deposited with the trustee to pay the same, and that such money was deposited for the express purpose of paying the same when presented for payment. The grantor was also given the privilege of paying one or more of said bonds at any interest maturing date commencing March 1, 1919, *by giving to said trustee,* or the owner and holder of the bonds, thus sought to be paid, written notice thirty days in advance of the maturity date upon which such payment was to be made at a premium of two per cent of the face value of such bonds. If default was made in the payment of any taxes or assessments, general or special, before they became delinquent, or in the payment of any judgment, mechanics' lien or other lien after final judgment had been rendered thereon, creating a lien superior to the lien of this indenture, or if said grantor should suffer any lien to attach on the property, leases and leasehold rights thereby conveyed and mortgaged superior to the lien of this indenture, or should violate any of the covenants or agreements therein contained, to be kept and performed by the grantor, or contained in any of said leases, or if the grantor should fail, refuse and neglect to provide the insurance required or pay the premiums therefor when the same became due and payable *the trustee,* or any

bondholder might pay and discharge the same, and all such sums so paid should become a part of the debt thereby secured and should have priority over said bonds and coupons, and the payor thereof should have a first lien therefor upon any funds in the hands of the trustee and upon such property. In case default should be made in the performance of any of the terms or conditions or any of said leases, *the trustee,* as well as any holder or holders of any of the bonds hereby secured, was entitled to prevent any forfeiture or cancellation of such lease by .performing any term or condition therein then in default, including .the payment of any money due or payable according to such lease, and any amounts so paid should become an additional debt secured thereby. In case of any default the whole of the principal of all outstanding bonds should *at the option of the trustee,* become at once due and payable without notice, *and the trustee might proceed to sell any and every part of said property at public vendue, either as a whole or in parcels, as said trustee might elect,* to the highest bidder for cash, etc. It was also provided that in case of default said trustee upon application in writing by any ·bondholder should institute and prosecute with diligence the proper and requisite proceeding or proceedings for a foreclosure of the lien created by this mortgage deed of trust upon the property situated in the State of Oklahoma, *such action or actions to be in the name of the trustee for the equal use and benefit of each and every holder of said bonds and coupons.* It was further provided that no foreclosure should be instituted or prosecuted by the holder of any coupons of such ˙bond or bonds *until after the trustee shall have been requested in writing to take· such action* and shall have refused or failed to comply therewith within a reasonable time, etc. And finally it was provided that the grantor should have the right to sell any of the mortgaged property and said trustee should have the power and authority to release the same, *provided the selling price should be satisfactory to the trustee, and the proceeds of the sale should be paid to the trustee, who should apply such part thereof on said bonds and coupons as it should deem advisable to protect the bondholders, and the balance said trustee should pay to the grantor.* ·

From the foregoing it is apparent that this trustee was invested with powers far beyond those which ordinarily reside in a trustee specified in a deed of trust for the sole purpose of foreclosing the lien on a request of the beneficiary therein named. The powers here conferred upon the trustee are similar to those indicated in deeds of trust in Rumsey v. Peoples Ry. Co., 154 Mo. 215, and in Mercantile Trust Co. v. Schlafly, 299 Fed. 202, l. c. 204. There being no charge or evidence of bad faith on the part of the trustee, it was clearly invested with full power to represent the bondholders in litigation.

315 Mo. Sup.—19.

In Lilly v. Tobbein, 103 Mo. 477, l. c. 489, we held that although a suit to contest a will is an action at law and we have no statute extending the equity rule of class representation to actions at law, yet, "looking to the parties who should be brought before the court, the method of making up and submitting the issue of will or no will, and the character and form of the judgment, we can but conclude that a suit to contest or establish a will has many of the features of a suit in chancery; and the equity rule allowing one or more members of a voluntary association to sue for all should be applied to cases like the one in hand." While the facts in this mechanics' lien case did not bring it within the full scope of the Act of 1911 so as to support the equitable proceeding thereby authorized to adjudicate two or more mechanics' liens claimed against the same property, yet it did come within the purview of Section 8235c of said act authorizing the equitable relief of determining priorities, and the foregoing doctrine of representation of the bondholders by the trustee is applicable. Equity having attached and the bondholders being in court for the purpose of this equitable relief, they were in court for all purposes and were bound by any valid judgment rendered therein.

II. Appellants also insist that the mining lease of the Crescent Lead & Zinc Corporation and the improvements located thereon, including the property sold, constituted an interest in real estate, and the sale had upon ten days' notice as provided in sales of personal property is void.

**Notice.**

We have Kirk v. Mattier, 140 Mo. 23, representative of a good line of decisions fully supporting the view that a land owner may execute a mining lease which will create in the lessee an interest in the real estate, and not a mere incorporeal right. It is also well established that as between lessor and lessee the right to remove improvements placed or erected by the lessee on leased premises may be determined in advance by agreement, as was done in the lease of the Crescent Lead & Zinc Corporation. [Tiffany Real Property (2 Ed.) sec. 271.] In passing on this objection, however, it becomes unnecessary to thread the maze of decisions relating to the law of fixtures, or to determine whether the rights under this particular mining lease constituted an interest in real estate, or whether if it did the improvements located thereon were also an interest in real estate. Even if there had been no publication of notice of sale it does not necessarily follow that the sale is void. It is the duty of the sheriff to give the notice required by the statute, and he is liable to the debtor for any damages resulting from his omission. If there is any fraudulent omission of which the purchaser has notice the sale will be held void, but "the purchaser is not affected by any irregularity in the sheriff's proceedings in making sale under an execution, unless he has

participated in occasioning it, or there has been some departure from the requirements of the law for some fraudulent purpose." We so held in Draper v. Bryson, 17 Mo. 71, 1. c. 84, where in a sale of real estate under execution it appeared that the property was levied on and advertised on the 27th day of November and sold on the 9th of December. In Curd v. Lackland, 49 Mo. 451, 1. c. 454, in sale of real estate under execution, the notice was treated as though none had been given and the same doctrine was stated in vigorous terms thus: "When a stranger purchases for a good and adequate consideration, in ignorance of the irregularity, and receives a deed good upon its face, the sale should be treated as valid, notwithstanding the sheriff's neglect in regard to the notice." We have apparently never receded from this position which is supported by the great weight of authority, as stated in 44 Am. Dec. 239n., quoting Freeman on Executions (3 Ed.) sec. 286: "Though the authorities are not all agreed, the general rule is that 'statutes requiring notice of the sale to be given are directory merely, and that the failure to give such notice cannot avoid the sale against any purchaser not himself in fault.'" We quote further from the same section of Freeman on Executions: "This rule has been applied in cases where the purchaser was aware of the deficiency of the notice, and seems to be applicable in all cases in which the absence of the notice was not occasioned by some fraud or collusion of which the purchaser had knowledge, or in which he participated." Respondent Machinery & Supply Company was the purchaser at the execution sale. It was a stranger to the suit and judgment upon which the execution was issued. Plaintiffs pleaded no fraud or collusion on the part of the purchaser or any one else as to the notice of sale, or knowledge of the purchaser as to the character of notice given, nor is there any evidence to this effect, nor has the debtor Crescent Lead & Zinc Corporation ever made application to set aside the sale. The proper remedy in such case where cause exists is thus indicated in Freeman on Executions (3 Ed.) sec. 286: "An objection to the form of a notice can only be made by the defendant, and cannot be successfully urged by him, unless he proceeds to take advantage of it without any unnecessary delay. . . . No doubt the proper method, in nearly all the states, of taking advantage of an insufficient notice, or of the absence of all notice, is by some motion or proceeding to prevent or to vacate the sale." [Young v. Schofield, 132 Mo. 650, 1. c. 668.] Colonel Kealy, one of the appellants and a director of the Crescent Lead & Zinc Corporation at the time the property was sold, testified that a Joplin machinery man, Mr. Martin, told him that the advertisement offering this property for sale was running in the daily papers of Joplin and at his request Mr. Martin sent him a copy. The sale was had on the 18th day of November, 1921, under an execution which was not returnable until

the January, 1922, term of the Circuit Court of Jasper County. Under the pleadings and facts in the case the contention that the sale is void because of insufficient notice is without merit and it is denied.

III.   Appellants also claim that the sheriff's return of process in the mechanics' lien suit shows no valid service on defendant Crescent Lead & Zinc Corporation; that the court should have ordered

**Return.** the sheriff to amend his return to conform to all the facts disclosed by oral testimony; and that the service being void as to the principal debtor, the default judgment was void as to all defendants.

In support of their contention that the court should have directed the sheriff to amend his return appellants cite Feurt v. Caster, 174 Mo. 289.   This case (l. c. 299) holds that "the power to allow amendments is vested in the court, to be exercised upon such terms as may

**Amendment.** be just, and the officer is not given any absolute power of amendment."   As to amendments after judgment, as in the case now before us, the statute (Sec. 1277, R. S. 1919) provides that "*the court may*, in furtherance of justice, and on such terms as may be just, *amend in affirmance of such judgment* any record, pleading, process," etc.   (Italics ours.)   Appellants sought to amend the sheriff's return, not in affirmance of but to void the judgment.   The statute does not authorize this to be done.   Appellants also cite Kahn v. Ins. Co., 228 Mo. 585, but to no avail, because the court there permitted the sheriff to amend his return before judgment was entered, and the only question raised or discussed was whether or not the court had a right to order this amendment without first giving notice to defendant.   Neither is Sibole v. McKinnies, 217 S. W. (Mo. App.) 577, in point, because it related to an amendment of the sheriff's process allowed after judgment on motion of the purchaser at the execution sale in aid of the judgment, and the only question discussed was whether or not the judgment debtor and his assignees were entitled to notice before this amendment was made. The facts before us do not bring the case within the doctrine invoked and this phase of the objection is ruled against appellants.

A more difficult situation is presented in the body of the sheriff's return, which is as follows (italics ours) :

"I Hereby Certify, That at the County of Jasper, State of Missouri, on this 10th day of December, A. D. 1920,

**Service: Upon Watchman.** in the within named suit, I served process on the within named defendant, the Crescent Lead & Zinc Company, being the first defendant served herein.

"And I Further Certify, That at said time and at and in the business office of said Company, defendant hereinafter described, I ex-

ecuted said service on said Company, defendant, by delivering at and in said business office a duly certified copy of the original writ therein, and of the hereto attached copy hereof together with a duly certified copy of the original petition and of the hereto attached copy thereof *to J. L. Poorman who then was and ever since has been the watchman of the said Company, defendant,* a corporation then and ever since having in the ———— of ———— in the County of Jasper aforesaid its said business office where said process was served as aforesaid; that is to say, the business office, usually had and maintained by it in the transaction of its usual, ordinary and customary business, *with its said agent J. L. Poorman in charge thereof, and in said business office and in charge thereof at the time of said service of said process as aforesaid.*

"And I Further Certify, That at the time of said service the President and other chief officers of said Company, defendant, were absent from my said county and were not found."

This return upon its face positively asserts that J. L. Poorman, to whom certified copies of the writ and petition were delivered, "then was and ever since has been the watchman of the said Company, defendant." The return also as positively asserts that said defendant then had its business office where said process was served, and that the said J. L. Poorman was in said business office and in charge thereof at the time of said service. Appellants insist that a watchman is not, within the meaning of Section 1192, Revised Statutes 1919, governing service of process upon domestic corporations, the person having charge of any business office of the corporation, and hence, on the face of the return the service was void. Respondents, on the other hand, say that the sheriff's return is conclusive and on its face shows good service on said defendants. Respondents did not avail themselves of their right under the statute to show all the facts and ask the court to order the sheriff to amend his return to conform therewith, in affirmance of the judgment, but elected to stand on this return.

The statute governing this service is Section 1192, Revised Statutes 1919, which reads as follows: "When any such summons shall be issued against any incorporated company, service on the president or other chief officer of such company, or, in his absence, by leaving a copy thereof at any business office of said company with the person having charge thereof, shall be deemed a sufficient service; and if the corporation have no business office in the county where suit is brought, or if no person be found in charge thereof, and the president or chief officer cannot be found in such county, a summons shall be issued, directed to the sheriff of any county in this State, or any other state, where the president or chief officer of such company may reside or be found, or where any office or place of business may be

kept of such company, and the service thereof shall be the same as above."

The recital in the sheriff's return that the person to whom he delivered this process was "the watchman of the said Company, defendant," challenges our attention. This observation was under the statute unnecessary to his return, and would hardly have been made unless the sheriff himself had some doubt as to whether or not J. L. Poorman was in fact under the statute "the person having charge" of defendant's business office. Its appearance in the return is indicative of the sheriff's desire to show the facts rather than assume the sole responsibility of determining that Poorman was the person having charge of defendant's business office. In 19 Ency. Pl. & Pr. 654, this prevailing doctrine is stated: "Where the statute designates particular persons, or classes of persons, on whom the process may be served, the service must be made on one of the specified persons, else the corporation will not be bound thereby." Hence, this question confronts us: Was this watchman a person having charge of defendant's business office within the meaning of this statute? Will both recitals in the sheriff's return stand in the face of a reasonable interpretation of the law?

In Funk & Wagnall's New Standard Dictionary a watchman is defined as "a person whose business it is to keep watch or guard; especially a man employed to guard a building, etc., at night." It should be observed that the section now before us differs from other sections permitting service, in certain circumstances, upon the agents or employees of foreign corporations. Here, it will not do to serve just any employee found in the corporation's business office. The person served must have charge of the business office, and a mere recital in the officer's return that the person served was the person having charge of the business office, if the return also discloses facts in contradiction thereof, will not suffice. As stated in Jenkins v. Penn Bridge Co., 73 S. C. 526, 53 S. E. 991: "The object of service of the summons is not only to give notice to the defendant of the pendency of a suit against him, but to bring him under the jurisdiction of the court." Therefore, in sound reason and from necessity we must determine whether Poorman was really the person having charge of defendant's business office within the meaning of this law. We have found but one Missouri case, State ex rel. v. Myers, 126 Mo. App. 544, discussing this statute (which is the same as Sec. 995, R. S. 1899) from this angle, and we quote somewhat at length from the well reasoned opinion by Judge J. M. JOHNSON (l. c. 550, 551, 552):

"The object of all service of process for the commencement of suit is to give notice to the party proceeded against and any statutory service which reasonably accomplishes that end answers the require-

ment of natural justice. Unquestionably the legislative branch of government has the power to prescribe the method of giving such notice to corporations doing business in the State, subject only to the rule that the method provided must be one that, with reasonable certainty, will result in the actual reception by the corporation of the notice served. Otherwise, a defendant, in many instances, would be deprived of property without due process of law. A statute cannot be said to be unreasonable or to deprive a corporation of any of its fundamental rights which provides for bringing the corporation into court by the service of summons on an officer, agent, or employee whose duties are such that any ordinarily careful person in his position would be reasonably certain to apprise the corporation of the service. An agent in charge of an important station where all of the business of a railroad with a populous community is transacted would certainly attend to the transmission of all papers served on him to the proper officer, while a section hand, if served, could not be expected to know what to do, nor to care whether or not the company knew of the service. Consequently, a statute providing for the service of process on an agent of the character described would be reasonable, while one which authorzed service to be made on a mere laborer would be unreasonable.

"Turning to the provisions of Section 995 (R. S. 1899), it is quite clear the Legislature intended, within the limits we have defined, to afford the public every reasonable facility for the prosecution in court of claims against corporations. When the president or other chief officer is absent from the county, service may be made at any business office maintained by the corporation in that county. This does not mean the office where the greatest volume of business is transacted, nor one where the business is of a particular character, but any office where any business affairs of the corporation are conducted is a place where service may be made, when the person in charge thereof may be presumed to be reasonably certain to forward the papers to his superior officer. In the present case, it is conceded that business of the relator was transacted at the office where the papers were served and, in our opinion, it was business of a very important character. The safety of persons and property depended on the fidelity and accuracy of the person in charge of that office in the performance of his duties. His relation to his employer was such that no other inference can be entertained than that any reasonably prudent person in his position would have done just what he did—immediately placed the papers in the proper channel. It is immaterial that no business was transacted with the public. The statute does not say that business of that particular class must be carried on at the place where service is made in order that it may be valid. 'Any business office' refers not to the room or building, but to the nature of the

activity conducted in it, and a fixed place where any of the affairs of the corporation is made a subject of regular attention is a business office. A place established for the transmission of train orders, whether it is that occupied by the chief dispatcher or by one of his subordinates, is a business office, and to say that service made at such place on the person in charge thereof is not good service would be reading into the statute a meaning not authorized by the language employed and one beyond the scope of the expressed legislative intent.

"In answer to the example which counsel for relator employ to illustrate their argument, we would say that service made on a switchman at his 'shanty' would not be good. A switchman is not a person whose duties justify the inference that he would be reasonably certain to transmit the papers and, further, there is no business of any kind conducted in his 'shanty.' It is a mere shelter and not a place where any part of his duties is performed."

From the record before us it appears that the duties of a watchman of this defendant would have taken him not only to and through the various buildings and improvements of an extensive mining plant, but over a large acreage of land. It may also be reasonably inferred that he was present as a watchman only at night when no business was transacted at the business office, or if his services were required there during the day it was because all business activity had ceased at the mine and he served simply as a care-taker of the premises. It is not unreasonable to think that the persons here contemplated are those who are directly connected with the business usually transacted in the business office, and not mere laborers or care-takers of the premises. Any view that can be taken forces the conclusion that this watchman was not in this sense in charge of any business office of defendant then and there "had and maintained by it in the transaction of its usual, ordinary and customary business." If he had been in the employ of a foreign corporation, required to maintain an office where service could be had in this State, a different situation might confront us. [State ex rel. v. Sale, 232 Mo. 166, l. c. 175.] Upon the reasoning set forth in State ex rel. v. Myers, supra, to hold that this watchman was a person upon whom service could be made binding upon the corporation, would be to hold this statute unreasonable. We consider this assignment of error meritorious, and hold that no valid service was had on the Crescent Lead & Zinc Corporation, defendant in the mechanics' lien suit. This corporation being the principal debtor, it follows that the judgment was also void as to defendant Peoples Trust Company of Kansas City, and the bondholders, appellants herein. [Russell v. Grant, 122 Mo. 161, l. c. 179.]

This holding renders it is unnecessary to rule upon appellants' claim that the sale price under the mechanics' lien judgment was so grossly inadequate as to warrant setting the sale aside.

IV.  We now turn to a consideration of certain counter objections urged by respondents, the first of which is that plaintiffs' petition did not state a cause of action in equity.  The bill charged fraud, **Pleading.** sale of the property for a grossly inadequate sum, alleged facts in support thereof, asked for an accounting, foreclosure of the mortgage deed of trust, appointment of a receiver, and for general equitable relief.  We think is clearly stated a case in equity.  [Mangold v. Bacon, 237 Mo. 496, l. c. 511.]

Respondents also say that the giving of the mortgage deed of trust and securities therein mentioned was an illegal transaction, contrary **Notice to Stockholders.** to the Constitution and Sections 9740 and 9741, Revised Statutes 1919, relating to notices of stockholders' meetings, and violative of the Blue Sky Law, Sections 11919-32, Revised Statutes 1919, and therefore equity will not entertain jurisdiction, citing 21 Corpus Juris, Sections 157, 179, 180, relating to the maxims, "he who seeks equity must do equity," "he who comes into equity must come with clean hands," and "equity aids the vigilant, not those who slumber on their rights."

As to the question of notice, we have frequently held that insofar as they apply to private corporations these notices are required for the benefit of stockholders and not for the public, that they may be waived, and that the constitutional and statutory provisions relating thereto are merely directory.  [Riesterer v. Land and Lumber Co., 160 Mo. 141; State v. Adkins, 284 Mo. 680, l. c. 692.]  Defendants' own witness Falley, who was a director and manager of Crescent Lead & Zinc Corporation and perhaps in better position than any one else to know the facts, testified that he couldn't recall whether or not sixty days' notice was given, but he declared that all stockholders were notified and a stockholders' meeting was had authorizing the issuance of these securities.  There was record evidence that full authority was given at a meeting of the board of directors, presumably regular, in pursuance of power delegated to that body under the by-laws.  No stockholder has ever complained, none are now complaining, and respondents are in no position to complain.

As for the above equity maxims with which respondents would shield themselves, the first two are subject to the important qualifications that the equity which the party seeking equity is required to do must arise from and belong to the transaction as to which he seeks *Equity* relief (21 C. J. sec. 155), and the misconduct condemned must relate to the very transaction concerning which complaint is made.  [21 C. J. sec. 173.]  The matter appellants com-

plained of was the mechanics' lien judgment, and the giving of the mortgage deed of trust and securities by the Crescent Lead & Zinc Corporation was a transaction long precedent to and in no manner connected with it. These maxims, therefore, have no application. The third maxim quoted underlies the doctrine of laches which is not in the case. Respondents do not even discuss it in their brief, and we will treat the citation as erroneous or abandoned. The giving of the mortgage deed of trust and securities was not a transaction that should cause equity to look askance, and respondents' objections thereto are overruled.

Respondents further say that the mortgage was void as to creditors because the domicile of the Crescent Lead & Zinc Corporation was in Jackson County, Missouri, while this instrument was recorded only in Jasper County, Missouri, the statute requiring **Recording Mortgage.** all chattel mortgages to be recorded in the county where the mortgagor is domiciled. The lien judgment being invalid no question of notice is left in the case, and this contention will be disregarded.

The judgment is reversed and the cause remanded with directions to enter judgment for the relief in plaintiffs' petition prayed and not inconsistent herewith. All concur.